1
2
3
4
5
6

**COHELAN KHOURY & SINGER**
Michael D. Singer (SBN 115301)
msinger@ckslaw.com
Jeff Geraci, CA Bar No. SBN 151519
jgeraci@ckslaw.com
605 C Street, Suite 200
San Diego, CA 92101
Telephone: 619.595.3001 / Facsimile: 619.595.3000

7
8
9
10
11

**FERRARO VEGA EMPLOYMENT LAWYERS, INC.**
Nicholas J. Ferraro (SBN 306528)
nick@ferrarovega.com
2305 Historic Decatur Road, Suite 100
San Diego, CA 92106
Telephone: (619) 693-7727

12  Attorneys for Plaintiff JOSE LORETO

13          **UNITED STATES DISTRICT COURT**

14        **SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 15  JOSE LORETO, on behalf of himself<br>16  and all others similarly situated,<br>17          Plaintiff<br>18      v.<br>19  <br>20  GENERAL DYNAMICS<br>21  INFORMATION TECHNOLOGY,<br>INC., a Virginia Corporation; and DOES<br>22  1 through 10, inclusive,<br>23          Defendants.<br>24 | Case No. 3:19-cv-01366-GPC-MSB<br>**CLASS ACTION**<br><br>**NOTICE OF FILING FULLY-EXECUTED JOINT STIPULATION OF CLASS ACTION SETTLEMENT AND RELEASE**<br><br>Date:      April 30, 2021<br>Time:      1:30 p.m.<br>Judge:     Gonzalo P. Curiel<br>Ctrm.:     2D (2nd Floor)<br><br>Action filed:  July 23, 2019<br>Trial Date:   Not set |

25
26
27
28

*COHELAN KHOURY & SINGER*
*605 C Street, Suite 200*
*San Diego, CA 92101*

1    PLEASE TAKE NOTICE that Plaintiff Jose Loreto ("Plaintiff") is filing

2  the <u>fully-executed</u> Joint Stipulation of Class Action Settlement and Release

3  ("Settlement Agreement"), including it exhibits, attached as Exhibit "1." The

4  attached Settlement Agreement is intended to supersede and replace the partially-

5  executed Settlement Agreement filed on March 10, 2021, in conjunction with

6  Plaintiff's Motion for Preliminary Approval of Class Action Settlement [ECF No.

7  43], attached as Exhibit 1 to the Declaration of Jeff Geraci [ECF No. 43-2, pp. 20-

8  93].

9    Other than adding the signatures of (1) Plaintiff Jose Loreto, and (2)

10  Counsel for Plaintiff, Nicholas J. Ferraro, no changes were made to the Settlement

11  Agreement or to its exhibits.

12                                    Respectfully submitted,

13                                    COHELAN KHOURY & SINGER
                                      FERRARO EMPLOYMENT LAW, INC.
14

15  Dated: March 11, 2021          By: s/ Jeff Geraci
                                          Jeff Geraci, Esq.
16                                    Attorneys for Plaintiff JOSE LORETO

17

18

19

20

21

22

23

24

25

26

27

28

Notice of Filing Fully-Executed Settlement Agreement
Case No. 3:19-CV-01366-GPC-MSB

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

# EXHIBIT 1

## JOINT STIPULATION OF CLASS ACTION SETTLEMENT AND RELEASE

This Joint Stipulation of Class Action Settlement and Release (hereinafter "Settlement Agreement") is made and entered into by and between the following parties: Plaintiff Jose Loreto ("Plaintiff"), individually and on behalf of other members of the general public similarly situated, and Defendant General Dynamics Information Technology, Inc. ("GDIT") (collectively, the "Parties"), and their respective counsel of record.  This Settlement Agreement is subject to the terms and conditions set forth below and to the approval of the Court.  This Settlement Agreement supersedes any and all prior memoranda of understanding and accurately sets forth the Parties' class action settlement to resolve all claims as detailed below.

## I.    DEFINITIONS

1.      "Action" means the lawsuit entitled *Jose Loreto v. General Dynamics Information Technology, Inc.*, Case No. 3:19-cv-01366 GPC MSB, filed in the United States District Court for the Southern District of California.

2.      "Claims Period" shall mean the period of forty-five (45) days following the mailing of the Class Notice by the Settlement Administrator.  If the 45th day falls on a Sunday or holiday, the Claims Period shall end on the next business day that is not a Sunday or holiday.

3.      "Class Counsel" or "Plaintiff's Counsel" means Jeff Geraci of Cohelan Khoury & Singer and Nicholas J. Ferraro of Ferraro Employment Law, Inc.

4.      "Class Member" means all individuals employed by GDIT in a non-exempt job position at a work location in California, according to GDIT's records, at any time between July 23, 2015 and September 30, 2020.

5.      "Class Notice" or "Notice of Settlement" shall mean the document attached hereto as Exhibit A.

6.      "Class Representative," "Plaintiff," or "Named Plaintiff" means Plaintiff Jose Loreto, who has been designated by Plaintiff's Counsel as the Class Representative for settlement purposes.

7.      "Class Settlement Payment" is the allocation from the Net Settlement Amount paid to Settlement Class Members and does not include the PAGA Group Payment to PAGA Members.

8.      "Complaint" means the Second Amended Complaint for which the Parties will request leave from the Court within 5 days of execution of this Settlement Agreement for Plaintiff to file in this Action.

9.      "Court" means the United States District Court for the Southern District of California.

10.     "Covered Class Workweeks" will mean, as reflected on GDIT's internal records, all workweeks from July 23, 2015 through the Preliminary Approval Date in which a Class Member worked for GDIT in a non-exempt job position in California.

11.     "Covered PAGA Pay Periods" will mean, as reflected on GDIT's internal records, all pay periods from June 26, 2018 through the Preliminary Approval Date in which a Class Member worked for GDIT in a non-exempt job position in California.

12.     "Deficient Request for Exclusion" means a Request for Exclusion that is not signed by the Class Member submitting the Request for Exclusion or cannot be verified by the Settlement Administrator as being an authentic submission by the Class Member.

13.     "Effective Date" means that date on which the settlement embodied in this Settlement Agreement shall become effective after all of the following events have occurred: (i) Final Approval of the Settlement is granted by the Court; and (ii) the Court's order approving the Settlement becomes a Final Judgment.

14.     "Fairness Hearing" means the hearing to be scheduled by the Court after granting preliminary approval of the Settlement.

15.     "Final Approval Order" means the Court's order approving the Settlement after the Fairness Hearing and entering judgment.

16.     "Final Approval" means the date on which the Court enters the Final Approval Order.

17.     "Final Judgment" means the latest of:  (a) the date of final affirmance on an appeal of the Final Approval Order and Judgment; (b) the date of final dismissal with prejudice of the last pending appeal from the Final Approval Order and Judgment; or (c) if no appeal is filed, the expiration date of the time for the filing or noticing of any form of valid appeal from the Final Approval Order and Judgment.

18.     "GDIT" means Defendant General Dynamics Information Technology, Inc.

19.     "GDIT Releasees" means GDIT and all of its former, current, and future related organizations, companies, divisions, subsidiaries, affiliates, insurers, and parents, and each of their respective predecessors, successors, and assigns, as well as each of their respective former, current and future directors, officers, employees, agents, representatives, attorneys, fiduciaries, assigns, heirs, executors, administrators, beneficiaries, benefit plans, plan administrators, insurers and trustees.

20.     "GDIT's Counsel" means Morgan, Lewis & Bockius LLP.

21.     "Late Request for Exclusion" means a Request for Exclusion that is submitted to the Settlement Administrator after the end of the Claims Period.

22.     "LWDA" means the California Labor and Workforce Development Agency.

23.     "LWDA PAGA Penalty Amount" is the 75% share of the $45,000 (or $33,750) allocated from the Maximum Settlement Amount for PAGA penalties that will be paid to the LWDA.

24.     "Maximum Settlement Amount" is the sum of Nine Hundred Thousand U.S. Dollars ($900,000), which represents the maximum amount payable in this Settlement by GDIT, and includes all attorneys' fees, litigation costs, Settlement Administration Expenses, and Service Enhancement award to the Class Representative.  The Maximum Settlement Amount does not include the employer's share of payroll taxes, for which GDIT is responsible through an additional contribution to the Qualified Settlement Fund.

25.     "Net Settlement Amount" is the portion of the Maximum Settlement Amount eligible for distribution to Settlement Class Members.  It equals the Maximum Settlement amount less Class Counsel's attorneys' fees and actual litigation costs as ordered to be paid by this Court, Settlement Administration Expenses, the LWDA PAGA Penalty Amount, the PAGA Group Payment, and Service Enhancement to the Class Representative.

26.     "Non-Overtime Workweek" means a Covered Class Workweek in which a Class Member did not work overtime hours, according to GDIT's records.

27.     "Overtime Workweek" means a Covered Class Workweek in which a Class Member worked overtime hours, i.e., more than 8 hours in a day or 40 hours in a week, according to GDIT's records.

28.     "PAGA" means the California Labor Code Private Attorneys General Act, California Labor Code §§ 2698 *et seq.*

29.     "PAGA Group Payment" is the 25% share of the $45,000 (or $11,250) allocated from the Maximum Settlement Amount for PAGA penalties that will be paid to PAGA Members.

30.     "PAGA Member" means all individuals employed by GDIT in a non-exempt job position at a work location in California, according to GDIT's records, at any time between June 26, 2018 and September 30, 2020.

31.     "Parties" means collectively Plaintiff and GDIT herein.

32.     "Preliminary Approval Date" means the date the Court approves this Stipulation of Settlement, and the exhibits thereto, and enters an Order providing for notice to the Class, an opportunity to opt-out of the Class, an opportunity to submit timely objections to the settlement, a procedure for submitting claims, and setting a hearing for Final Approval of the Settlement, including approval of attorneys' fees and costs.

33.     "Qualified Settlement Fund" means the Qualified Settlement Fund ("QSF") created under Internal Revenue Code Section 468B, to be overseen by the Settlement Administrator.

34.     "Released Class Claims" means any and all claims, obligations, demands, actions, rights, causes of action, and liabilities against GDIT Releasees, whether in law or equity, that have been asserted in the Complaint, or could have been asserted in the Complaint based on the facts and allegations pled therein, and including all such claims for recovery of compensation, and/or all penalties under the California Labor Code and California's Wage Orders, the California Business & Professions Code, from July 23, 2015 through the Preliminary Approval Date.  With respect to the Released Class Claims only, and only to the extent permitted by law, Settlement Class Members waive their rights under California Civil Code section 1542 which states:

> **A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.**

35.     "Released PAGA Claims" means any and all claims, obligations, demands, actions, rights, causes of action, and liabilities against GDIT Releasees, under PAGA, that have been asserted in the Complaint, or could have been asserted in the Complaint based on the facts and allegations pled therein, and including all such claims for recovery of compensation, and/or all penalties under the California Business & Professions Code, from June 26, 2018 through the Preliminary Approval Date. With respect to the Released PAGA Claims only, and only to the extent permitted by law, PAGA Members waive their rights under California Civil Code section 1542 which states:

> **A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.**

36.     "Request for Exclusion" means a signed request from a Class Member to be excluded from the non-PAGA portions of this Settlement.

37.     "Service Enhancement" means the incentive payment in an amount not to exceed $10,000 total to the Class Representative.

38.     "Settlement Administration Expenses" are those expenses incurred by the Settlement Administrator in effectuating the Settlement, not to exceed $13,200.

39.     "Settlement Administrator" means CPT Group, Inc.

40.     "Settlement Class Member" means any Class Member who does not opt out of the settlement or who opts out but subsequently rescinds the opt-out in a timely manner.

41.     "Stipulation of Settlement" and "Settlement Agreement" shall mean this Joint Stipulation of Settlement and Release.

42.     "Waiting Time Penalties Payments" means the payments to Waiting Time Penalties Subclass Members to be allocated out of the Net Settlement Amount, in the amount of $200 per Waiting Time Penalties Subclass Member.

43.     "Waiting Time Penalties Subclass Member" means a Settlement Class Member that is a former employee as of the Preliminary Approval Date and whose employment with GDIT was

terminated between July 23, 2016 and the Preliminary Approval Date.

44.    "Workweek Fund" means the remaining Net Settlement Amount, after deducting the Waiting Time Penalties Payments, to be allocated for payments to Settlement Class Members for their Covered Class Workweeks.

## II.    LITIGATION BACKGROUND

45.    On or about June 26, 2019, Plaintiff filed with the LWDA a PAGA notice letter which stated that Plaintiff intended to seek civil penalties against GDIT for various violations of the California Labor Code and Industrial Welfare Commission ("IWC") Wage Orders.  On July 23, 2019, Plaintiff filed his initial complaint against GDIT in the United States District Court for the Southern District of California.  On September 5, 2019, Plaintiff filed a First Amended Complaint.  Within 5 days of execution of this Settlement Agreement, the Parties will request leave from the Court for Plaintiff to file the proposed Second Amended Complaint attached as Exhibit B.  The proposed Second Amended Complaint ("Complaint") asserts class and representative action claims under California law for (1) failure to pay overtime wages, (2) failure to timely pay wages at separation, (3) failure to provide accurate itemized wage statements, (4) failure to provide all meal/rest premium wages, (5) unfair business practices, and (6) PAGA civil penalties.

46.    GDIT denies Plaintiff's claims, and asserts that GDIT has complied with all applicable labor laws.  Consequently, GDIT does not believe that any liability to Plaintiff, the State of California or the LWDA, or to any other individual whom Plaintiff seeks to represent exists, or that Plaintiff, the State of California or the LWDA, or any other any other individual whom Plaintiff seeks to represent are entitled to any recovery in the Action.

47.    On October 2, 2020, the Parties participated in a mediation with experienced mediator Michael E. Dickstein, Esq.  At the mediation, the Parties accepted a mediator's proposal as to certain material terms of the Settlement, including the Maximum Settlement Amount.  The terms of the settlement are now set forth in complete and final form in this Settlement.

48.    Neither this Settlement, nor any final judgment pursuant to this Settlement, will constitute an admission of any form of wrongdoing or liability on the part of GDIT or the accuracy of any allegation

raised in the Action.  This Settlement is entered into in compromise of disputed claims.  Plaintiff and GDIT intend, by their actions pursuant to this Settlement, merely to avoid the expense, delay, uncertainty, and burden of litigation.  This Settlement and any related court documents or orders may not be cited or otherwise admitted as evidence of liability.  There has been no final determination by any Court as to the merits of the Action.

49.     It is the intention of the Parties that this Settlement Agreement will constitute a full and complete settlement and release of the claims averred in the Action by the Plaintiff individually, on behalf of the Class Members, and as the authorized proxy and agent of the State of California and the LWDA on behalf of all PAGA Members pursuant to PAGA.  This release includes in its effect a release of all the GDIT Releasees.

**III.     JURISDICTION AND VENUE**

50.     This Court has jurisdiction over the Parties and the subject matter of this Settlement. This Court will have continuing jurisdiction over the terms and conditions of this Settlement Agreement, until all payments and obligations provided for herein have been fully executed.

**IV.     TERMS OF SETTLEMENT**

51.     NOW, THEREFORE, in consideration of the mutual covenants, promises, and undertakings set forth herein, the Parties agree, subject to the Court's approval, as follows:

**A.     Non-Admission of Liability**

52.     Nothing in this Settlement Agreement, or any communications, papers, or orders related to this Settlement Agreement, will be construed to be or deemed an admission by the GDIT Releasees of any liability, culpability, negligence, or wrongdoing toward the Plaintiff, the Class Members, the PAGA Members, or any other person, and the GDIT Releasees specifically disclaim any liability, culpability, negligence, or wrongdoing toward the Plaintiff, the Class Members, the PAGA Members, or any other person.  GDIT also maintains that, for any purpose other than settlement, the claims alleged in the Action are not suitable or appropriate for class and/or representative action treatment pursuant to California Code of Civil Procedure Section 382, California Labor Code § 2698 *et seq.*, or any other applicable laws or rule(s).  Each of the Parties has entered into this Settlement Agreement with the intention to avoid further

disputes and litigation with the attendant inconvenience, expenses, and contingencies, including in the Action. This Settlement Agreement and any communications, papers, or orders related to the Settlement Agreement may not be cited or otherwise admitted as evidence of liability, whether in the Action or elsewhere. There has been no final determination by any Court as to the merits of the claims asserted by Plaintiff against GDIT. Furthermore, nothing in this Settlement Agreement will be considered any form of waiver of any applicable alternative dispute resolution policy, and GDIT expressly does not waive any right to enforce arbitration agreements and class, collective, and representative action waivers in any other circumstance.

**B.    Certification**

53.    The Parties stipulate, for settlement purposes only, to the certification of the Class described in Paragraph 4 above as to all claims asserted in the Complaint pursuant to state law. If for any reason the Court does not approve this Settlement, fails to enter the Final Approval Order, or fails to enter the Judgment or Final Judgment, or if this Settlement Agreement and Stipulation is lawfully terminated for any other reason, GDIT shall retain the absolute right to dispute the propriety of class certification and/or the ability of this action to proceed as a representative action on all applicable grounds.

54.    The Parties further stipulate that, for settlement purposes only, Plaintiff's Counsel may be appointed Class Counsel and that Named Plaintiff may be appointed as Class Representative. GDIT's stipulation to this settlement class shall in no way be considered any form of waiver of any form of alternative dispute resolution. GDIT's stipulation to this settlement class shall not be construed as an admission or acknowledgment of any kind that any class should be certified or given class action treatment. The Settlement Class may be provisionally certified as a class action for the purposes of the monetary relief provided in this Settlement Agreement. Plaintiff's Counsel may be preliminarily and conditionally appointed as Class Counsel.

**C.    Non-Approval By The Court**

55.    In the event that this Settlement Agreement is not approved by the Court, fails to become effective, is reversed, withdrawn or modified by the Court:

(a)    The Settlement Agreement will have no force or effect, other than the

confidentiality provisions in Section XII and the non-admission provisions in Paragraph 52;

(b)    The Settlement Agreement will not be admissible in any judicial, administrative or arbitral proceeding for any purpose or with respect to any issue, substantive or procedural;

(c)    None of the parties to this Settlement Agreement will be deemed to have waived any claims, objections, defenses or arguments with respect to the merits of Plaintiff's claims; and

(d)    GDIT does not waive, and instead expressly reserves its rights to challenge the propriety of the Action proceeding as a class and/or representative action.

**D.    Settlement Payments**

56.    GDIT agrees to pay a Maximum Settlement Amount of Nine Hundred Thousand Dollars ($900,000), inclusive of (a) all settlement payments to Class Members and PAGA Members; (b) all PAGA penalty settlement payments to the LWDA and PAGA Members; (c) any award of attorneys' fees and out-of-pocket litigation costs and expenses to Plaintiff's Counsel; (d) any award of a Service Enhancement; and (e) all payroll taxes and other applicable taxes for the settlement payments, excluding GDIT's share of employer taxes on the amounts allocated to wages which will be paid separately from and in addition to the Maximum Settlement Amount.  The parties specifically agree, subject to Court approval, to the following allocations to be paid from the Maximum Settlement Amount:

(a)    From the Maximum Settlement Amount, Plaintiff's Counsel may seek from the Court attorneys' fees up to 33 1/3% of the Maximum Settlement Amount, and actual litigation costs and expenses up to $15,000.  GDIT takes no position on Plaintiff's request for fees and costs provided it does not exceed these amounts.

(b)    From the Maximum Settlement Amount, Plaintiff's Counsel may seek from the Court a Service Enhancement award to Plaintiff not to exceed $10,000, which GDIT will not oppose provided it does not exceed this amount.

(c)    From the Maximum Settlement Amount, Settlement Administration Expenses in

a reasonable amount currently estimated at $13,200.

(d)     From the Maximum Settlement Amount, a payment of $33,750 to the LWDA (the LWDA PAGA Penalty Amount), representing the LWDA's 75% share of the settlement attributable to PAGA penalties.

(e)     From the Maximum Settlement Amount, a payment of $11,250 to be allocated among PAGA Members based on the number of Covered PAGA pay periods each PAGA Member worked (the PAGA Group Payment).

(f)     From the Net Settlement Amount (*i.e.*, the remainder of the Maximum Settlement Amount, including interest accruing to it, after payments have been made for attorneys' fees and litigation expenses, the Service Enhancement, the Settlement Administration Expenses, the LWDA PAGA Penalty Amount, and the PAGA Group Payment), settlement payments will be allocated as follows:

(g)     Out of the Net Settlement Amount, each Settlement Class Member in the Waiting Time Penalties Subclass will receive a payment of $200 as the Waiting Time Penalties Payment.

(h)     After deducting the Waiting Time Penalties Payments, the remaining Net Settlement Amount will be the Workweek Fund and will be paid to the Settlement Class Members based on Class Members' eligible employee service time for Covered Class Workweeks.  Class Members shall be allocated three (3) points of credit for each Overtime Workweek they worked within the Covered Class Workweeks and one (1) point of credit for each Non-Overtime Workweek they worked within the Covered Class Workweeks.  To calculate each Class Member's proportional share:

(i)     Add all points for all Class Members to obtain the Denominator;

(ii)    Divide the number of points for each Class Member by the Denominator to obtain each Class Member's portion of the Workweek Fund;

(iii)   Multiply each Class Member's portion of the Workweek Fund by the

Workweek Fund to determine each Class Member's estimated individual settlement payment.

(i)     If the number of Class Members as of September 30, 2020 exceeds 724 individuals by more than 5% (more than 761 individuals), GDIT will increase the Maximum Settlement Amount on a pro rata basis per person to cover the number of Class Members above 761.

(j)     If the Court approves a lesser amount of attorneys' fees and litigation costs or the Service Enhancement, or the Settlement Administrator Expenses, than the amount sought by Plaintiff and Plaintiff's Counsel, any amount disallowed by the Court will be added to the Net Settlement Amount to be distributed in pro rata shares to the Settlement Class Members, except if Plaintiff and Plaintiff's counsel appeal an order reducing the requested amount of attorneys' fees and litigation costs or the Service Enhancement, then any amount not approved by the Court will not be added to the Net Settlement Amount and after the resolution of the appeal any amount not approved, if any, will be distributed by *cy pres* to the California CASA Association.  The Parties agree that the Settlement Agreement will remain binding with such modification(s) as ordered by the Court, and its terms will be otherwise unchanged.  This Settlement is not conditioned upon the Court's approval of Plaintiff's Counsel's petition for fees and costs or the amount of any Service Enhancement awards.

(k)     The Settlement Administrator will disburse monies from the Maximum Settlement Amount as and when authorized in this Settlement Agreement and by order of the Court, will file and issue any necessary tax reporting documents, and will inform the Parties and (as required) the Court of its fulfillment of the duties imposed by this Settlement Agreement.

(l)     The Settlement Administrator will issue settlement checks to the Settlement Class Members, PAGA Members, and the LWDA under this Settlement

Agreement, as well as the Service Enhancement to the Plaintiff and attorneys' fees and expenses awarded to Plaintiff's Counsel, by sending such payments by mail or other reliable means to the respective recipients as specified below.

**E.**     **Objections**

57.     Only Settlement Class Members who do not opt-out may object to the Settlement.  Class Members who opt-out of the Settlement are not eligible to object.  All objections must be sent no later than forty-five (45) days after the mailing of the Class Notice, and such deadline applies notwithstanding any argument regarding non-receipt of the notice.  Anyone who fails to send timely written objections in this manner shall be deemed to have waived any objections and shall be foreclosed from filing any appeal from any Final Approval Order issued by the Court.  The Parties may file a response to any objections submitted by objecting Class Members at or prior to the Fairness Hearing.  Class Members shall be permitted to withdraw their objections in writing by submitting a withdrawal statement to the Settlement Administrator not later than one (1) business day prior to the Fairness Hearing, or as otherwise ordered by the Court.

**F.**     **Opt-Outs**

58.     Class Members who wish to "opt out" of and be excluded from the non-PAGA portion of this settlement must submit a written Request for Exclusion from the Settlement bearing a post-mark from a date within the Claims Period.  Class Members are still bound by the release of PAGA claims even if they submit a valid Request for Exclusion and will receive a check with his or her individual payment from the PAGA Group Payment if he or she is a PAGA Member.  The Request for Exclusion must include: (a) the Class Member's name; (b) a statement that the Class Member desires to exclude himself or herself from the case; and (c) the last four digits of the Class Member's social security number. If a Class Member submits a Deficient Request for Exclusion, the Settlement Administrator shall notify the Class Member of the deficiency within five (5) business days of receipt.  The Class Member shall have until the end of the Claims Period or five (5) business days after the close of the Claims Period if the notice of deficiency is sent by the Settlement Administrator within (5) business days of the end of the Claims Period to cure said deficiencies, at which point his or her Request for Exclusion will be rejected if

not received.  Class Members submitting untimely or Deficient Requests for Exclusion shall be bound by the Settlement and its releases and will be considered Settlement Class Members for settlement distribution purposes.  Class Members shall be permitted to rescind their Request for Exclusion in writing by submitting a rescission statement to the Settlement Administrator not later than one (1) business day prior to the Fairness Hearing, or as otherwise ordered by the Court.  The Settlement Administrator shall not accept Late Requests for Exclusion without the written authorization of GDIT.

> **G.    Released Class Claims**

59.    Upon the Effective Date, each Class Member who has not opted out of the Settlement and the Class Representative shall be deemed to have fully, finally, and forever released GDIT Releasees from all Released Class Claims as set forth in Section VII.  Plaintiff, in conjunction with his requesting his Service Enhancement, also will enter into the General Release as set forth in Section VII.B.

> **H.    Released PAGA Claims**

60.    Upon the Effective Date, Plaintiff individually, and the State of California, the LWDA, and all PAGA Members, through Plaintiff acting as the proxy and agent for the State of California and the LWDA and as a Private Attorney General acting on behalf of all allegedly aggrieved current and former employees of GDIT, will be deemed to have fully, finally, and forever released the GDIT Releasees from all Released PAGA Claims as set forth in Section VII.

> **I.    Entry of Judgment**

61.    At the Fairness Hearing, the Parties will request that the Court, among other things:  (a) finally certify the Settlement Class for purposes of settlement only; (b) enter a Final Approval Order in accordance with the terms of this Settlement Agreement; (c) approve the settlement as fair, adequate, reasonable, and binding on all Settlement Class Members; and (d) enter an order permanently enjoining all Settlement Class Members from pursuing and/or seeking to reopen claims that have been released by this Settlement Agreement.

**V.    SETTLEMENT ADMINISTRATION**

> **A.    Settlement Administrator Duties**

62.    The Settlement Administrator will create a Qualified Settlement Fund ("QSF"), to be

funded by the Maximum Settlement Amount paid by GDIT and administered by the Settlement Administrator. The Settlement Administrator shall have control over the distribution of funds from the QSF, once funded. With respect to the QSF, the Settlement Administrator shall: (1) satisfy all federal, state and local and income and other tax reporting, return, and filing requirements with respect to the QSF and any interest or other income earned by the QSF; and (2) satisfy out of the QSF all fees, expenses and costs incurred in connection with the opening and administration of the QSF and the performance of its duties and functions as described in this Settlement Agreement. The aforementioned fees, costs and expenses shall be treated as and included in the costs of administering the QSF and as Settlement Administration Expenses. The Parties agree to cooperate with the Settlement Administrator and one another to the extent reasonably necessary to carry out the provisions of this Section. If the Court does not enter the Final Approval Order and Judgment or if the Effective Date does not occur, GDIT shall not be obligated to wire the aforementioned funds.

63.     Pursuant to the terms of this Settlement Agreement, the Settlement Administrator will be responsible for and the Maximum Settlement Amount will cover: (a) calculating each Class Member's potential recovery of the Net Settlement Amount; (b) preparing and mailing to all Class Members the Class Notice with estimated Class Settlement Payment amounts and (if applicable) a PAGA Group Payment amount, and instructions on how to opt out of or object to the Settlement, and will take appropriate steps to trace, update and locate any individual Class Members whose address or contact information as provided to the Settlement Administrator is inaccurate or outdated; (c) receiving and serving on Class Counsel and GDIT's Counsel, and the Court, Requests for Exclusion and any withdrawal and rescission statements; (d) providing to Class Counsel and GDIT's Counsel a weekly report of activity; (e) establishing a toll free telephone line and responding to inquiries and requests for information or assistance from Class Members; (f) determining and paying the final amounts due to be paid to Settlement Class Members after adjustment for funds due to Class Members who opt out of the settlement; (g) reporting to Class Counsel, GDIT's Counsel, and the Court regarding the completion of the tasks identified in this paragraph; and (h) carrying out other related tasks including the proper maintenance of the QSF and reporting required for that account, in accordance with the terms of this

Settlement Agreement.

64.    All disputes relating to the Settlement Administrator's ability and need to perform its duties will be referred to the Court, if necessary, which will have continuing jurisdiction over the terms and conditions of this Settlement Agreement, until all payments and obligations contemplated by the Settlement Agreement have been fully executed.

65.    When and if the Court grants Final Approval of the Settlement, and the Settlement Effective Date as defined herein has passed, the Settlement Administrator shall prepare a final list of all Settlement Class Members and PAGA Members.  The Settlement Administrator shall provide this list to GDIT's counsel within 7 days after the Settlement Effective Date.  For each Settlement Class Member and PAGA Member on this list, the Settlement Administrator will re-calculate the amounts due to each Settlement Class Member and PAGA Member and issue checks payable to said Settlement Class Members and PAGA Members.

66.    Except for the Service Enhancement described above to be paid to the Class Representative, all Class Settlement Payments to Settlement Class Members shall be allocated as follows: 50% of each individual settlement payment as unpaid wages, which will be reported on an IRS Form W-2 with applicable withholdings; and 50% of each individual settlement payment as non-wage recovery, including interest and penalties, which will be reported on an IRS Form 1099 without withholdings.  All PAGA Group Payments will be allocated entirely to statutory penalties and will be reported on an IRS Form 1099 without withholdings.  GDIT is responsible for paying the employer tax contributions on the amounts allocated as unpaid wages as required by law.  The Class Representative and Settlement Class Members must pay their own portion of payroll and all applicable income taxes on the 50% of the Class Settlement Payment that is unpaid wages, and such amounts will be withheld from the individual settlement payments.  The Class Representative and Settlement Class Members shall be exclusively liable for any and all tax liability on the amounts allocated as non-wage recovery.  The Settlement Administrator shall be responsible for the timely reporting and remitting of the Employer Payroll Tax Payment to the appropriate taxing authorities and shall indemnify GDIT for any penalty arising out of an incorrect calculation and/or interest with respect to late payment of the same.  All Parties

represent that they have not received, and shall not rely on, advice or representations from other Parties or their agents or attorneys regarding the tax treatment of payments under federal, state, or local law.

67.     The Service Enhancement to the Class Representative shall be treated as compensation for non-wage related claims, injuries, and reimbursement, and shall be reported on an IRS Form 1099 without withholdings.

68.     All portions of Class Settlement Payments to Named Plaintiff and/or Settlement Class Members that are allocated as unpaid wages under this Settlement Agreement shall be considered compensation for disputed wages of Class Members during the period of employment with GDIT.  To the extent any individual settlement payment results in any overpayment of unemployment benefits to the Named Plaintiff and/or any Settlement Class Member, the amount of any such overpayment shall be the responsibility of the individual Named Plaintiff and/or Settlement Class Member.

69.     Each Party to this Settlement Agreement (for purposes of this section, the "acknowledging party" and each Party to this Agreement other than the acknowledging party, an "other party") acknowledges and agrees that (1) no provision of this Settlement Agreement, and no written communication or disclosure between or among the Parties or their attorneys and other advisers, is or was intended to be, nor shall any such communication or disclosure constitute or be construed or be relied upon as, tax advice within the meaning of United States Treasury Department Circular 230 (31 CFR Part 10, as amended); (2) the acknowledging party (a) has relied exclusively upon his, her, or its own, independent legal and tax counsel for advice (including tax advice) in connection with this Settlement Agreement, (b) has not entered into this Settlement Agreement based upon the recommendation of any other party or any attorney or advisor to any other party, and (c) is not entitled to rely upon any communication or disclosure by any attorney or adviser to any other party to avoid any tax penalty that may be imposed on the acknowledging party; and (3) no attorney or adviser to any other party has imposed any limitation that protects the confidentiality of any such attorney's or adviser's tax strategies (regardless of whether such limitation is legally binding) upon disclosure by the acknowledging party of the tax treatment or tax structure.

70.     After all payments have been disbursed from the QSF, the Settlement Administrator shall

dissolve the QSF and file a return (SF-1120) with the IRS.

**B.**     <u>**Notice to Class Members**</u>

71.     Within thirty (30) days after the Preliminary Approval Date, GDIT shall provide to the

Settlement Administrator information in electronic format regarding all Class Members, including

name(s), last known residence addresses, Social Security numbers, and dates worked for Covered Class

Workweeks.  Class Member data shall only be used by the Settlement Administrator for the purpose of

calculating settlement shares and finding and notifying Class Members of the settlement.  Class Member

data will be subject to the Settlement Administrator's confidentiality agreement and shall not be disclosed

to the Named Plaintiff, Class Counsel, or any other Class Members without the written consent of GDIT,

except that GDIT will authorize the Settlement Administrator on a case-by-case basis to provide to

Plaintiff's Counsel information necessary to field any questions or address any challenges raised by a

specific Class Member.

72.     Prior to mailing the Class Notice, the Settlement Administrator will update the addresses

for the Class Members using the National Change of Address database and other available resources

deemed suitable by the Settlement Administrator.  Any returned envelopes from the initial mailing with

forwarding addresses will be used by the Settlement Administrator to locate Class Members and re-mail

the Class Notice to the correct or updated address.  The Settlement Administrator will use all appropriate

tracing methods, including skip tracing, to ensure that the Class Notice is received by Class Members.

The Settlement Administrator shall also take reasonable steps including skip tracing to locate any Class

Member whose Class Notice is returned as undeliverable.

73.     Within twenty-one (21) days of receiving the Class Member data from GDIT and after it

has completed all of the address updates for Class Members, the Settlement Administrator shall mail the

Class Notice to Class Members.  At least five (5) business days prior to this mailing, the Settlement

Administrator shall provide GDIT with a report listing the estimated settlement payment amounts to each

Class Member.

74.     Class Members shall have forty-five (45) days from the date of mailing of the Class

Notice to opt out of the Class or object to the Settlement.  If the 45th day falls on a Sunday or holiday, the

deadline will be the next business day that is not a Sunday or holiday. After recalculating estimated settlement allocations to account for opt-outs, Settlement Class Members will receive their allocation from the settlement fund agreed upon pursuant to this Settlement Agreement and calculated by the Settlement Administrator.

75.    All Settlement Administration Expenses shall come out of the Maximum Settlement Amount.

## VI.    CALCULATION AND DISTRIBUTION OF SETTLEMENT PAYMENTS

### A.    Calculation of Settlement Amounts

76.    The Settlement Administrator shall calculate pro rata Class Settlement Payments out of the Net Settlement Amount to Class Members as described in Paragraph 56 of this Agreement, and based on GDIT's internal records. The Settlement Administrator also shall calculate pro rata PAGA Payments to PAGA Members out of the PAGA Group Payment based on the percentage of each PAGA Member's eligible individual workweeks compared to the Covered PAGA Pay Periods as reflected on GDIT's internal records.

77.    In addition, GDIT, through the Settlement Administrator, shall also make a payment to the California LWDA for the LWDA PAGA Penalty Amount as consideration for the release of all PAGA claims that are the subject of the Action on behalf of the State of California.

### B.    Eligibility for Settlement Payments

78.    Class Members who have not opted-out of the settlement will be considered Settlement Class Members eligible to receive a Class Settlement Payment. Only Settlement Class Members will be eligible to receive a Class Settlement Payment.

79.    Each Class Notice mailed to a Class Member will identify his or her dates of employment for the Covered Class Workweeks and, if applicable, his or her dates of employment for the Covered PAGA Pay Periods that GDIT's records indicate the individual worked as a Class Member and will estimate each Class Member's pro rata share of the Net Settlement Amount including (if applicable) their share of the PAGA Group Payment as PAGA Members.

80.    Settlement Class Members will have the right to challenge only their dates of

employment for the Covered Class Workweeks or for the Covered PAGA Pay Periods as shown on the Class Notice. Settlement Class Members' challenges to their dates of employment for the Covered Class Workweeks or for the Covered PAGA Pay Periods listed on the Class Notice shall be sent directly to the Settlement Administrator at the address indicated on the Class Notice. Any challenge must be made during the Claims Period. The Settlement Administrator will inform Class Counsel and GDIT's Counsel in writing of any timely filed challenges. GDIT's records are presumed to be accurate unless the Settlement Class Member submits documentation demonstrating otherwise, *i.e.*, a Settlement Class Member who fails to provide written proof will have his or her challenge denied. In the event of any dispute over an individual's workweeks, GDIT's Counsel, after consultation with Plaintiff's Counsel, will investigate the challenge and determine whether any additional workweeks should be credited to the Settlement Class Member making the challenge. GDIT will decide whether the Settlement Class Member's challenge shall be accepted. GDIT's decision is final and binding without a right of appeal.

81.    The Settlement Administrator shall (a) date stamp all original Requests for Exclusion that it receives; (b) serve copies on Class Counsel and GDIT's Counsel no later than 5 business days after receipt, or immediately if received within 5 business days of the Fairness Hearing; and (c) file the date-stamped originals with the Clerk of the Court no later than 5 business days prior to the date of the Fairness Hearing or immediately if received less than 5 business days prior to the date of the Fairness Hearing.

82.    The Settlement Administrator shall also (a) date stamp all original rescissions of Requests for Exclusion it receives; (b) serve copies on Class Counsel and GDIT's Counsel no later than 5 business days after receipt, or immediately if received within 5 business days of the Court's Fairness Hearing; and (c) file the date-stamped originals with the Clerk of the Court no later than 5 business days prior to the date of the Fairness Hearing or immediately if received less than 5 business days prior to the date of the Fairness Hearing.

83.    The Settlement Administrator shall be responsible for issuing and mailing the checks and any necessary tax reporting forms to Settlement Class Members and/or PAGA Members, the Class Representative, Class Counsel, and GDIT. The Settlement Administrator shall provide a declaration of payment, which will be filed with the Court and served on Class Counsel and GDIT within 150 days after

mailing the payments to Settlement Class Members, PAGA Members, the Class Representative, and Class Counsel.

        **C.**    <u>**Process and Deadlines**</u>

        84.    Within seven (7) days after the Effective Date, the Settlement Administrator shall make the final calculation of Class Settlement Payments from the Net Settlement Amount to be distributed to the Settlement Class Members.  Upon completion of its final calculation of payments, the Settlement Administrator shall provide GDIT's Counsel with a report listing the amount of all Class Settlement Payments to be made to each Settlement Class Member and all payments out of the PAGA Group Payment to be made to each Settlement Class Member and/or PAGA Member.

        85.    Within 14 days after the Effective Date, GDIT will provide payment of the Maximum Settlement Amount to the Settlement Administrator to fund the QSF to be created by the Settlement Administrator, in addition to GDIT's share of employer payroll taxes for the payments reportable on IRS Form W-2.

        86.    Within 30 days after the Effective Date, the Settlement Administrator shall distribute and pay Class Settlement Payment checks to all Settlement Class Members, pay the Class Representative his Service Enhancement payment, issue a check to the LWDA for the LWDA PAGA Penalty Amount, issue checks to the PAGA Members for their PAGA Group Payments, and pay Class Counsel's attorney's fees and costs.

        **D.**    <u>**Uncashed Settlement Checks**</u>

        87.    Settlement Class Members who are sent Class Settlement Payments and PAGA Members who are sent PAGA Group Payments will have 120 calendar days after mailing by the Settlement Administrator to cash settlement checks and will be so advised of such deadline.  If such Settlement Class Members and/or PAGA Members do not cash their checks within that period, those checks will become void and a stop payment will be placed on the uncashed checks.  Within thirty (30) days after the expiration date of the settlement checks, the Settlement Administrator shall provide to Class Counsel and GDIT's Counsel a verification/declaration signed under penalty of perjury that it has mailed the settlement checks to Settlement Class Members and/or PAGA Members, and if uncashed, that such

amounts have been sent to the Controller of the State of California to be held pursuant to the Unclaimed Property Law, California Civil Code Section 1500, *et seq*. in the name of the Settlement Class Member and/or PAGA Member to whom the uncashed check was addressed, for the benefit of those Settlement Class Members and/or PAGA Members who did not cash their checks until such time as they claim their property.

## VII.    RELEASE OF CLAIMS

### A.    Release by Plaintiff, Settlement Class Members, PAGA Members, and the LWDA

88.    Upon the Effective Date, Plaintiff and each and every Settlement Class Member, will be deemed to have, and by operation of the Final Approval Order and Judgment entered by the Court will have fully, finally, and forever released, relinquished, and discharged each and all of the GDIT Releasees from any and all Released Class Claims.  All Settlement Class Members shall be bound by the release, unless they formally opt-out.  The Settlement Class Members shall be deemed to have expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights, and benefits they may otherwise have had relating to the Released Class Claims pursuant to Section 1542 of the California Civil Code, as described in Paragraph 34.

89.    Upon the Effective Date, Plaintiff, on behalf of himself and on behalf of the LWDA and each and every PAGA Member, will be deemed to have, and by operation of the Final Approval Order and Judgment entered by the Court will have fully, finally, and forever released, relinquished, and discharged each and all of the GDIT Releasees from any and all Released PAGA Claims.  All PAGA Members shall be bound by the release as to any Released PAGA claims even if they have formally opted out of the Settlement Class.  The PAGA Members shall be deemed to have expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights, and benefits they may otherwise have had relating to the Released PAGA Claims pursuant to Section 1542 of the California Civil Code, as described in Paragraph 35.

90.    The Parties agree that this Settlement Agreement is conditioned upon this release of all Released Class Claims as defined in Paragraph 34 and Released PAGA Claims as defined in Paragraph 35.  Upon the Effective Date, Plaintiff, the LWDA, and each and every Settlement Class Member and

PAGA Member will be bound by the terms of this Settlement Agreement and will have recourse exclusively to the benefits, rights, and remedies provided hereunder.

91.     The Parties further understand and agree that this Settlement Agreement, in conjunction with the Preliminary Approval Order, prohibits and enjoins any participating Settlement Class Member (including Plaintiff) from bringing against the GDIT Releasees any of the Released Class Claims and Released PAGA Claims through and including the Final Approval Date.

92.     Plaintiff agrees that this Settlement Agreement is further conditioned upon his individual covenant not to participate in any further proceedings seeking damages, penalties, or other remedies for any Released Class Claims or Released PAGA Claims.  Plaintiff agrees that the Settlement is fair and reasonable and will participate in the settlement.

93.     Settlement is further conditioned upon covenant by Settlement Class Members who are PAGA Members that they will not participate in any proceeding seeking penalties under Labor Code § 2699 for claims based on facts which were or could have been alleged in the Complaint.

**B.      General Release by Plaintiff**

94.     For and in accepting the consideration of the Service Enhancement awarded, Plaintiff further will make a general release (the "General Release") on behalf of himself and his heirs, executors, administrators, representatives, successors and assigns, of the GDIT Releasees, to the full extent permitted by law, of and from any and all claims, obligations, demands, actions, rights, causes of action, and liabilities against the GDIT Releasees (as defined in Paragraph 19), whether or not acting in the course and scope of employment, and all persons acting by, through, under, or in concert with any of them, of any and every kind, nature and character whatsoever, known or unknown, suspected or unsuspected, whether based on a tort, contract, statute, or any other theory of recovery, and whether for compensatory or punitive damages which Plaintiff had at any time heretofore or claimed to have or which Plaintiff may have or claims to have regarding events that have occurred relating to any work performed for the GDIT Releasees as of the Preliminary Approval Date.  This includes all of Plaintiff's claims against the GDIT Releasees related to or arising out of Plaintiff's employment with the GDIT Releasees, and/or the cessation of employment or purported employment therefrom.  These claims expressly include, but are

not limited to, those arising under the Americans With Disabilities Act of 1990 (42 U.S.C. §§ 12101, *et seq.*), the Employee Retirement Income Security Act (29 U.S.C. § 1000, *et seq.*), the Family and Medical Leave Act, the Fair Labor Standards Act ("FLSA") (29 U.S.C. §§ 201 *et seq.*), the Lily Ledbetter Act, Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000, *et seq.*), the California Family Rights Act, California Equal Pay Law, California Whistleblower Protection Laws, California Pregnancy Disability Leave Law, the California Fair Employment and Housing Act (Cal. Government Code § 12900, *et seq.*), and any and all claims related to the following: unpaid wages; unpaid overtime; failure to pay all compensation on termination of employment; missed meal periods; missed rest periods; reimbursement of expenses; inaccurate wage statements; deductions and/or chargebacks from wages; any alleged violations of the California Labor Code; any alleged violations of applicable federal law including, but not limited to, the FLSA; any alleged violation of and/or any remedy provided by the California Civil Code and/or the California Code of Civil Procedure including, but not limited to, section 1021.5; any claims for penalties under the California Labor Code and/or the California Private Attorneys General Act, California Labor Code section 2698 *et seq.* ("PAGA"); any and all claims for relief under California Business and Professions Code section 17200 *et seq.*, including any and all claims for injunctive relief; and any and all other claims for relief, including any associated prayers for compensatory damages, indemnification, injunctive relief, punitive damages, liquidated damages, penalties, interest, attorneys' fees or costs; any claims arising under the California Constitution; and any of Plaintiff's claims or allegations that GDIT Releasees deprived Plaintiff of any pay or other benefits or legal protections to which Plaintiff alleges Plaintiff is or was entitled.  The Plaintiff and GDIT Releasees intend for this definition to be all encompassing and to act as a full and total release of any of Plaintiff's claims that Plaintiff may legally waive or release against GDIT Releasees arising from any work Plaintiff performed for GDIT Releasees, whether specifically enumerated herein or not, that the Plaintiff might have or had, that exists or ever has existed on or to the Preliminary Approval Date.  Plaintiff's General Release also includes the waiver of any right to bring, maintain, or participate in a class, collective, or representative action against the GDIT Releasees to the maximum extent permitted by law.  Plaintiff's General Release, however, shall not constitute a release of any claims that may not lawfully be waived; further, Plaintiff does not waive any

23

right to file an administrative charge with the Equal Employment Opportunity Commission ("EEOC") or the National Labor Relations Board ("NLRB"), subject to the confidentiality provisions of the Settlement Agreement, and subject to the condition that Plaintiff not seek, or in any way obtain or accept, any monetary award, recovery or settlement therefrom and understands that such limitation does not in any way restrict his ability to file and pursue such charge consistent with the confidentiality obligations set forth in this Settlement Agreement; and further, Plaintiff does not waive any rights with respect to, or release GDIT Releasees from, any claims for unemployment insurance. Plaintiff previously released certain claims pursuant to a Settlement Agreement and General Release that he signed on January 11, 2020, and that release remains in full force and effect.

95.    Thus, for the purpose of implementing a full and complete release and discharge of the GDIT Releasees, Plaintiff expressly acknowledges that this General Release is intended to include in its effect, without limitation, all claims which Plaintiff does not know or suspect to exist in Plaintiff's favor at the time of execution hereof, and that this General Release contemplates the extinguishment of any such claim or claims.

96.    In connection with such waiver and relinquishment, Plaintiff hereby acknowledges that Plaintiff or his attorneys may hereafter discover claims or facts in addition to, or different from, those which he now knows or believes to exist, but that he expressly agrees to fully, finally and forever settle and release any and all claims, known or unknown, suspected or unsuspected, which exist or may exist on his behalf against the GDIT Releasees at the time of execution of the Settlement Agreement, including, but not limited to, any and all claims relating to or arising from Plaintiff's employment with GDIT Releasees or the cessation of that employment. Plaintiff and GDIT further acknowledge, understand and agree that this representation and commitment is essential to each Party and that this Settlement Agreement would not have been entered into were it not for this representation and commitment.

97.    It is further understood and agreed that as a condition of this General Release, and to effect a full and complete general release as described above, Plaintiff hereby expressly waives and relinquishes any and all claims, rights or benefits that he may have under California Civil Code Section 1542, which provides as follows:

> **A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.**

Plaintiff warrants that he has read this Agreement, including the waiver of California Civil Code section 1542, and that he has consulted with or had the opportunity to consult with counsel of his choosing and specifically about the waiver of section 1542, that he understands this Agreement and the section 1542 waiver, and that he freely and knowingly enters into this Agreement, this General Release, and the section 1542 waiver.

98.    Plaintiff further agrees that, unless required to do so by law, he will not testify, provide documents, or otherwise participate, or request others to participate on his behalf, in any proceeding or litigation that is related to any conduct by any GDIT Releasee as of the date of this Settlement Agreement.  Notwithstanding the foregoing, nothing in this General Release will prohibit or restrict Plaintiff from: (i) providing information to, or otherwise assisting in, an investigation by Congress, the Equal Employment Opportunity Commission or the NLRB, the Securities and Exchange Commission ("SEC") or any other California or federal regulatory or law enforcement agency or self-regulatory organization ("SRO"); (ii) testifying, participating, or otherwise assisting in a proceeding relating to an alleged violation of any California or federal law relating to fraud or any rule or regulation of the SEC or any SRO; or (iii) complying with a lawful subpoena or other legal process, subject to the terms of the Settlement Agreement.

99.    If any of the provisions, terms, clauses, waivers or releases of claims and rights contained in this General Release are declared illegal, unenforceable, or ineffective in a legal forum of competent jurisdiction, such provisions, terms, clauses, waivers or releases of claims or rights will be modified, if possible, in order to achieve, to the extent possible, the intentions of the parties and, if necessary, such provisions, terms clauses, waivers and releases of claims and rights will be deemed severable, such that all other provisions, terms, clauses and waivers and releases of claims and rights contained in this General Release will remain valid and binding upon both parties, provided, however, that, notwithstanding any

other provision of this General Release, if any portion of the waiver or release of claims or rights is held to be unenforceable, GDIT may, at its option, seek modification or severance of such portion, or terminate the Settlement Agreement pursuant to Paragraph 111.

100. Plaintiff further covenants that he will not participate in any other legal actions against GDIT that involve the claims released by Plaintiff pursuant to the Released Class Claims, the Released PAGA Claims, and Plaintiff's General Release as set forth in this Section VII, and will opt out of those actions if he becomes aware of such actions.

## VIII.   DUTIES OF THE PARTIES BEFORE PRELIMINARY APPROVAL AND BETWEEN PRELIMINARY AND FINAL APPROVAL

101. Plaintiff's Counsel, subject to GDIT's approval, will submit this Settlement Agreement to the Court together with the Motion for Preliminary Approval of Settlement and Certification of Settlement Class.  At least three (3) days before submission to the Court, Plaintiff will provide a draft of the Motion for Preliminary Approval and supporting papers to GDIT for its review and comment.  The motion shall seek an order:

    (a)    Preliminarily approving the settlement;

    (b)    Approving as to form and content the proposed Class Notice;

    (c)    Directing the mailing of the Class Notice to Class Members;

    (d)    Preliminarily certifying the Settlement Class for purposes of settlement and preliminarily appointing Named Plaintiff and Plaintiff's Counsel as representatives of the Settlement Class;

    (e)    Preliminarily approving settlement administration services to be provided by the Settlement Administrator;

    (f)    Preliminarily approving the Service Enhancement payment to Named Plaintiff as Class Representative;

    (g)    Preliminarily approving the application for payment of reasonable attorneys' fees and costs to Plaintiff's Counsel;

    (h)    Pending the Fairness hearing, enjoining Plaintiff and all Class Members and

anyone acting on behalf of any Class Member, until the Class Member opts out, from: further prosecution of the Action; filing, or taking any action directly or indirectly, to commence, prosecute, pursue or participate on a class action basis any action, claim or proceeding against GDIT in any forum in which any of the claims subject to the Settlement are asserted, or which in any way would prevent any such claims from being extinguished; or seeking certification of a class action that involves any such claims; and

(i)     Scheduling a Fairness Hearing on the question of whether the proposed settlement should be finally approved as fair, reasonable and adequate as to the members of the Settlement Class.

102.    In conjunction with their Motion for Preliminary Approval, Plaintiff's Counsel will submit the proposed Settlement to the LWDA, in accordance with Labor Code § 2699(l)(2).

103.    Within ten (10) business days following the filing of this Settlement with the Court, GDIT shall serve upon the appropriate Federal and State officials a notice of the proposed settlement in compliance with the requirements of the Class Action Fairness Act, 28 U.S.C. § 1715.

104.    GDIT shall provide to the Settlement Administrator within 30 days after the Preliminary Approval Date the Class Member data as set forth in Paragraph 71.  GDIT shall submit this information in electronic format as specified by the Settlement Administrator and shall thereafter, during the notice, approval, opt out, and payment processes, assist the Settlement Administrator as necessary or as requested to use, correct, or update this information in order to enable the Settlement Administrator to locate and contact Class Members, and to provide information needed or requested by the Settlement Administrator in order to make determinations on Class Members' challenges.

105.    The Parties shall cooperate with each other and the Settlement Administrator during the process of giving Class Members notice and opportunity to opt out of or object to the Settlement, in every way necessary and appropriate to assure effective communication to individual Class Members of information concerning their rights and obligations under this Settlement Agreement.

106.    Plaintiff's Counsel shall provide the Court at least five days prior to the Fairness Hearing

a declaration by the Settlement Administrator of due diligence and proof of mailing of the Class Notice required to be mailed to Class Members by this Settlement Agreement, and of the delivery results of the Settlement Administrator's mailings including tracing and re-mailing efforts.

107.    Plaintiff's Counsel represents that they do not currently represent any current or former employee who is intending to bring claims against GDIT or GDIT Releasees.

## IX.    DUTIES OF THE PARTIES AFTER FINAL COURT APPROVAL

108.    The Parties will submit a proposed Final Approval Order, which shall include findings and orders:

    (a)    Approving the settlement, adjudging the terms thereof to be fair, reasonable and adequate, and directing that its terms and provisions be carried out;

    (b)    Approving the payment of a Service Enhancement to the Named Plaintiff as Class Representative;

    (c)    Approving Class Counsel's application for an award of attorneys' fees and reimbursement of out-of-pocket litigation expenses;

    (d)    Releasing and extinguishing all Released Class Claims and Released PAGA Claims;

    (e)    Permanently enjoining all Class Members and Settlement Class Members from pursuing and/or seeking to reopen claims that have been released by this Settlement Agreement; and

    (f)    Providing that the Court will retain jurisdiction to oversee administration and enforcement of the terms of the Settlement and the Court's orders.

109.    Following entry of the Court's Final Approval Order, the Parties will each act to assure its timely execution and the fulfillment of all its provisions, including but not limited to the following:

    (a)    With the exception of any appeal by Plaintiff and Plaintiff's counsel of an order reducing the requested amount of attorneys' fees and litigation costs or the Service Enhancement, should an appeal be taken from the Final Approval Order, all Parties will support the approval order on appeal;

(b)    Class Counsel and GDIT's Counsel will assist the Settlement Administrator as needed or requested in the process of identifying and locating Class Members entitled to payments from the Net Settlement Amount and/or PAGA Group Payment and assuring delivery of such payments;

(c)    Class Counsel and GDIT's Counsel will assist the Settlement Administrator as needed or requested in responding to late requests for payments and the fair administration of that payment;

(d)    Class Counsel and GDIT's Counsel will cooperate with each other and assist the Settlement Administrator as needed.

(e)    The Parties and Class Counsel will certify to the Court completion of all payments required to be made by this Settlement Agreement.

## X.    PRELIMINARY TIMELINE FOR COMPLETION OF SETTLEMENT

110.    The preliminary schedule for notice, approval, and payment procedures carrying out this Settlement is as follows.  The schedule may be modified depending on whether and when the Court grants necessary approvals and orders notice to the class, and sets further hearings.  In the event of such modification, the Parties will cooperate in order to complete the settlement procedures as expeditiously as reasonably practicable.

| | |
|---|---|
| Within 30 days after the Preliminary Approval Date | GDIT to provide the Settlement Administrator the Class Member information, including name(s), last known residence addresses, Social Security numbers, and all employment dates worked in the Covered Class Workweeks. |
| Within 21 days after receipt of Class Member data from GDIT | Settlement Administrator to complete any skip trace or other address searched for Class Members, including updating any contact information.<br><br>Settlement Administrator to mail Class Notice to Class Members. |

| 5 business days before mailing Class Notice | Settlement Administrator to provide GDIT's Counsel with estimated Class Settlement Payments to each Class Member and PAGA Group Payments to each PAGA Member (and to Class Counsel without information identifying the Class or PAGA Members). |
| --- | --- |
| 45 days after mailing Class Notice | Deadline for Class Members to opt-out or object. |
| 1 business day before Fairness Hearing | Last day to rescind objections or opt-outs. |
| Effective Date | Following entry of the Final Approval Order and Judgment, the latest of the following dates: (a) the date of final affirmance on an appeal of the Approval Order and Judgment; (b) the date of final dismissal with prejudice of the last pending appeal from the Approval Order and Judgment; or (c) if no appeal is filed, the expiration date of the time for the filing or noticing of any form of valid appeal from the Approval Order and Judgment<br><br>(30 days after entry of the Court's Final Approval Order, if no appeals are filed) |
| Within 7 days after the Effective Date | Settlement Administrator to make the final calculation of Class Settlement Payments from the Net Settlement Amount to be distributed to the Settlement Class Members and provide GDIT's Counsel with a report listing the amount of all payments to be made to each Settlement Class Member and/or PAGA Member. |
| Within 14 days after the Effective Date | GDIT to transfer the Maximum Settlement Amount to the Settlement Administrator to be deposited into the QSF. |
| Within 30 days after the Effective Date | Settlement Administrator to distribute and pay settlement checks to the LWDA, the Settlement Class Members, and the PAGA Members, pay the Plaintiff his Service Enhancement, and pay Plaintiff's Counsel the attorneys' fees and costs approved and awarded by the Court. |
| 120 days after distribution of settlement checks. | Expiration of Settlement Class Members' and PAGA Members' settlement checks. |

| 150 days after distribution of settlement checks | Uncashed checks presented to Controller of the State of California. <br><br> Settlement Administrator to provide a declaration of payment, which will be filed with the Court and served on Class Counsel and GDIT. |
|---|---|

## XI.    VOIDING OR MODIFYING THE SETTLEMENT AGREEMENT

111.    GDIT has the right to withdraw from the Settlement at any time prior to the Effective Date if: (a) the Settlement is construed by the Court in such a fashion that GDIT is required to pay more than the Maximum Settlement Amount, except as described in Paragraph 56 of the Settlement Agreement; or (b) the Court denies approval of the Settlement; or (c) the Court does not certify the Settlement Class; or (d) 5% or more of Class Members elect to "opt-out" of the Settlement Class; or (e) Plaintiff or his counsel breach any term of this Settlement Agreement.

112.    If for any reason the Settlement Agreement is not approved, or GDIT withdraws from the Settlement, this Settlement Agreement and any related settlement documents (including the Parties' memorandum of understanding) will be null and void, other than the confidentiality and non-disclosure provisions in Section XII and the non-admission provisions in Paragraph 52.  In such an event, neither this Settlement Agreement, nor the parties' memorandum of understanding, nor the settlement documents, nor the negotiations leading to the Settlement, may be used as evidence for any purpose, and GDIT will retain the right to challenge all claims and allegations in the Action and to assert all applicable defenses on all applicable grounds.

113.    Other than as specified above, this Settlement Agreement may not be changed, altered, or modified, except in writing and signed by counsel for the Parties hereto, and approved by the Court. This Settlement Agreement may not be discharged except by performance in accordance with its terms or by a writing signed by the Parties hereto.

## XII.    CONFIDENTIALITY AND PUBLICITY

114.    Names of Class Members will be kept strictly confidential by the Settlement Administrator, who will not release such information to Plaintiff's Counsel and who will only file such

information under seal if necessary, except the Settlement Administrator may disclose, in a declaration filed publicly with the Court, the names of Class Members who submitted valid and timely Requests for Exclusion.  Plaintiff's Counsel agrees that any information they receive or have received in connection with this Settlement, may be used for the purposes of settling the Action only, and may not be used for any purpose or in any other action or proceeding.

115.    Plaintiff and Plaintiff's Counsel agree to keep this settlement strictly confidential until the Preliminary Approval Motion is filed and not to disclose the terms of this settlement except in court papers or if needed to respond to Class Member inquiries, except as set forth in this Paragraph.  Plaintiff and Plaintiff's Counsel shall not issue a press release, hold a press conference, publish information about the settlement on any website, or otherwise publicize the settlement.  Plaintiff and Plaintiff's Counsel agree not to respond to any press inquiries except to refer reporters to the papers filed with the Court.

## XIII.   **PARTIES' AUTHORITY**

116.    The signatories hereby represent that they are fully authorized to enter into this Settlement Agreement and bind the Parties hereto to the terms and conditions hereof.

## XIV.   **MUTUAL FULL COOPERATION**

117.    The Parties agree to fully cooperate with each other to accomplish the terms of this Settlement Agreement, including but not limited to, executing such documents and taking such other action as may reasonably be necessary to implement the terms of this Settlement Agreement.  The Parties to this Settlement Agreement will use their best efforts, including all efforts contemplated by this Settlement Agreement and any other efforts that may become necessary by order of the Court or otherwise to effectuate this Settlement Agreement and the terms set forth herein.  As soon as practicable after execution of this Settlement Agreement, Plaintiff's Counsel will, with the assistance and cooperation of GDIT and GDIT's counsel, take all necessary steps to secure the Court's approval of this Settlement Agreement.

## XV.   **NOTICES**

118.    Unless otherwise specifically provided herein, all notices, demands or other communications given hereunder will be in writing and will be deemed to have been duly given as of the

third business day after mailing by United States registered or certified mail, return receipt requested, addressed as follows:

> To Plaintiff's Counsel:
>
> Jeff Geraci
> COHELAN KHOURY & SINGER
> 605 C Street, Suite 200
> San Diego, CA 92101
> Tel:    (888) 808-8358
> Fax:    (619) 595-3000
> jgeraci@ckslaw.com
>
> Nicholas J. Ferraro
> FERRARO VEGA EMPLOYMENT LAWYERS, INC.
> Historic Decatur Road, Suite 100
> San Diego, CA 92106
> Tel:    (619) 693-7727
> nick@ferrarovega.com
>
> To GDIT's Counsel:
>
> Carrie A. Gonell
> MORGAN, LEWIS & BOCKIUS LLP
> 600 Anton Boulevard, Suite 1800
> Costa Mesa, CA 92626
> Tel:    (714) 830.0600
> Fax:    (714) 830.0700
> carrie.gonell@morganlewis.com

If the identity of the persons to be notified for any party changes, or their address changes, that party will notify all other parties of said change in writing.

## XVI.  MISCELLANEOUS PROVISIONS

### A.    Captions and Titles

119.    Paragraph titles, headings, or captions contained herein are inserted as a matter of convenience and for reference, and in no way define, limit, extend, or describe the scope of this Settlement Agreement or any provision hereof. Each term of this Settlement Agreement is contractual and not merely a recital.

### B.    Drafting

120.    The Parties hereto agree that the terms and conditions of this Settlement Agreement are the result of lengthy, intensive arms-length negotiations between the Parties.  Neither Party will be

considered the "drafter" of the Settlement Agreement for purposes of having terms construed against that party, and this Settlement Agreement will not be construed in favor of or against any Party by reason of the extent to which any Party or his, her or its counsel participated in the drafting of this Settlement Agreement.

### C.    Extensions of Time

121.    If a Party cannot reasonably comply with an obligation under this Settlement Agreement by the deadline set forth herein applicable to that obligation, that Party may apply to the Court for a reasonable extension of time to fulfill that obligation.  Consent to such a request for an extension will not be unreasonably withheld by the other party.

### D.    Governing Law

122.    The rights and obligations of the parties hereunder will be construed and enforced in accordance with, and will be governed by, the laws of the State of California, without regard to principles of conflict of laws.

### E.    No Impact on Benefit Plans

123.    Neither the Settlement Agreement nor any amounts paid under the Settlement Agreement will modify any previously credited hours or service under any employee benefit plan, policy, or bonus program sponsored by GDIT.  Such amounts will not form the basis for additional contributions to, benefits under, or any other monetary entitlement under GDIT's sponsored benefit plans, policies, or bonus programs.  The payments made under the terms of this Settlement will not be applied retroactively, currently, or on a going forward basis, as salary, earnings, wages, or any other form of compensation for the purposes of GDIT's benefit plan, policy, or bonus program.  GDIT retains the right to modify the language of its benefit plans, policies and bonus programs to effect this intent, and to make clear that any amounts paid pursuant to this Settlement Agreement are not for "hours worked," "hours paid," "hours of service," or any similar measuring term as defined by applicable plans, policies and bonus programs for purposes of eligibility, vesting, benefit accrual, or any other purpose, and that additional contributions or benefits are not required by this Settlement Agreement.

**F.**     <u>**Integration**</u>

124.     This Settlement Agreement contains the entire agreement between the Parties relating to the settlement of this Action and transaction contemplated hereby, and all prior or contemporaneous agreements, understandings, representations, and statements relating to this Action, whether oral or written and whether by a Party or such Party's legal counsel, are merged herein.  No rights hereunder may be waived except in writing.

**G.**     <u>**No Prior Assignments**</u>

125.     This Settlement Agreement will be binding upon and inure to the benefit of the Parties hereto and their respective heirs, trustees, executors, administrators and successors.  The Parties hereto represent, covenant, and warrant that they have not directly or indirectly assigned, transferred, encumbered, or purported to assign, transfer, or encumber to any person or entity any portion of any liability, claim, demand, action, cause of action or rights herein released and discharged except as set forth herein.

**H.**     <u>**Counterparts and Electronic Signatures**</u>

126.     This Settlement Agreement may be executed in counterparts with signatures transmitted by facsimile or as an electronic image (including DocuSign) of the original signature.  When each Party has signed and delivered at least one such counterpart, each counterpart will be deemed an original, and, when taken together with other signed counterparts, will constitute one Settlement Agreement, which will be binding upon and effective as to all Parties.  A facsimile signature or electronic image will have the same force and effect as the original signature.

[Signatures on following page]

**READ CAREFULLY BEFORE SIGNING**

**PLAINTIFF JOSE LORETO**

Dated: _3/10/2021_  _____

_JOSE LORETO_
_____
Jose Loreto

**DEFENDANT GENERAL DYNAMICS INFORMATION TECHNOLOGY, INC.**

Dated: _____

_____

Name: _____

Title: _____

**APPROVED AS TO FORM**

**COHELAN KHOURY & SINGER**

Dated: _____

_____
Jeff Geraci
Attorneys for Plaintiff Jose Loreto

**FERRARO VEGA EMPLOYMENT LAWYERS, INC.**

Dated: _3/10/2021_  _____

_Nicholas Ferraro_
_____
Nicholas J. Ferraro
Attorneys for Plaintiff Jose Loreto

**MORGAN, LEWIS & BOCKIUS LLP**

Dated: _____

_____
Carrie A. Gonell
Attorneys for Defendant General Dynamics
Information Technology, Inc.

**READ CAREFULLY BEFORE SIGNING**

**PLAINTIFF JOSE LORETO**

Dated: _____

_____
Jose Loreto

**DEFENDANT GENERAL DYNAMICS
INFORMATION TECHNOLOGY, INC.**

Dated: _03-10-2021_

_____
Name: _Valerie A. Fant_
Title: _Staff Vice President and Assistant General Counsel_

**APPROVED AS TO FORM**

**COHELAN KHOURY & SINGER**

Dated: _March 10, 2021_

_____
Jeff Geraci
Attorneys for Plaintiff Jose Loreto

**FERRARO VEGA EMPLOYMENT LAWYERS,
INC.**

Dated: _____

_____
Nicholas J. Ferraro
Attorneys for Plaintiff Jose Loreto

**MORGAN, LEWIS & BOCKIUS LLP**

Dated: _March 10, 2021_

_____
Carrie A. Gonell
Attorneys for Defendant General Dynamics
Information Technology, Inc.

# EXHIBIT A

<u>**NOTICE OF CLASS ACTION SETTLEMENT**</u>

**If you were employed by General Dynamics Information Technology, Inc. in a non-exempt position in California at any time between July 23, 2015 and September 30, 2020, a settlement of a class action lawsuit may affect your rights.**

*A court authorized this notice. This is not a solicitation from a lawyer.*

**TO UNDERSTAND YOUR RIGHTS, PLEASE READ THIS NOTICE CAREFULLY.**

A proposed class action settlement ("the Settlement") has been reached in a class action lawsuit entitled *Loreto v. General Dynamics Information Technology, Inc.*, Case No. 3:19-cv-01366-GPC-MSB, filed in the United States District Court for the Southern District of California (the "Action"). The lawsuit was filed by Plaintiff Jose Loreto ("Plaintiff") against Defendant General Dynamics Information Technology, Inc. ("GDIT"). Plaintiff and GDIT are collectively referred to as the "Parties."

Plaintiff, a former GDIT employee, asserts claims under California law for failure to pay overtime, failure to timely pay wages at separation, failure to provide accurate itemized wage statements, failure by employees to receive payment of all meal and rest period premium wages, which are alleged to be unfair business practices, on behalf of himself and all others employed by GDIT in non-exempt job positions in California, according to GDIT's records, at any time between July 23, 2015 and September 30, 2020 ("Class Members").

Plaintiff also asserts violations of California's Private Attorneys General Act ("PAGA") on behalf of himself and all other individuals employed by GDIT in non-exempt job positions in California, according to GDIT's records, at any time between June 26, 2018 and September 30, 2020 ("PAGA Members").

On ____, the Court preliminarily approved the Parties' class action settlement. The Settlement provides for individual settlement payments based on the number of workweeks and/or biweekly pay periods that Class Members worked for GDIT in a non-exempt job position in California from July 23, 2015 through the date of preliminary approval of the Settlement.

This notice summarizes the proposed settlement. For the precise terms and conditions of the settlement, please see the settlement agreement by accessing either [ADMIN WEBSITE] or the Court's docket in this case through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.casd.uscourts.gov. You may also contact the Settlement Administrator, Counsel for the Class, or Counsel for GDIT.

**Do not contact the Court or the Clerk's Office about this settlement.**

| YOUR LEGAL RIGHTS AND OPTIONS UNDER THE SETTLEMENT | |
|---|---|
| **DO NOTHING** | If you do nothing, you will automatically receive your share of the settlement if the Settlement receives final approval by the Court, and will be bound by the terms of the Settlement and releases described in this Notice. |

1

| EXCLUDE YOURSELF | If you do not wish to receive money from the settlement as a Class Member and wish to retain your rights to pursue the non-PAGA Labor Code claims at issue in this lawsuit, you may submit a written request for exclusion to the Settlement Administrator, postmarked no later than **[+45 days from mailing**.<br><br>By opting out or excluding yourself from the class action, you will not receive a settlement check as part of the class action settlement. You will not be bound by any of the non-PAGA terms of the settlement and will not release any of your non-PAGA legal claims against GDIT.<br><br>**NOTE: If you are a PAGA Member, as defined above, you cannot opt out of the PAGA Member group, even** if you opt out of the class action settlement. If the settlement is approved, you will receive a check for your allocation of the PAGA portion of the settlement, and you will be bound by the PAGA portion of the release whether you cash the check or not. |
|---|---|
| OBJECT | If you wish to object to the Settlement, you must submit a written Objection, and supporting papers, to the Court no later than **[+45 days from mailing]**. This option is available only if you do not exclude yourself from the class action settlement. |

**Settlement payments only will be issued if the Court grants final approval of the Settlement.**

## BASIC INFORMATION

### 1. Why did I get this notice?

Plaintiff and GDIT reached a settlement of a class action, and GDIT's records show you are a Class Member covered by this settlement. On **[_____]**, the Court ordered this Notice be provided to Class Members to explain the Action, the Settlement, and your legal rights.

### 2. What is this lawsuit about?

This is a class action and representative action, meaning it is a lawsuit seeking to have the claims and rights of many people decided in a single court proceeding. In the Second Amended Complaint filed in the action, Plaintiff Jose Loreto, a former GDIT employee, asserts the following claims under California law: failure to pay "all overtime wages including at the correct regular rate of pay"; failure by employees to receive all meal periods and rest breaks or meal and rest period premium wages at the correct regular rate of pay; failure to timely pay all wages and premiums during employment; failure to pay all final wages due upon separation of employment; failure to provide accurate itemized wage statements and maintain accurate wage-related records; and unfair competition. These class claims seek recovery going back to July 23, 2015. For more information regarding Plaintiff's claims, you are advised to refer to the Second Amended Complaint, which is available on the Settlement Administrator's website.

The Action also includes a claim for civil penalties for the above alleged Labor Code violations

2

brought on behalf of the State of California concerning Class Members whose covered workweeks go back to June 26, 2018. ("PAGA claims.")

GDIT denies Plaintiff's claims, and contends that GDIT has paid its California non-exempt employees properly and complied with all applicable laws. GDIT entered into the Settlement solely for purposes of avoiding the risks and uncertainty of litigation.

This Settlement is the result of good-faith, arm's-length negotiations between the Parties, through their respective attorneys, with the assistance of a neutral mediator. The Parties agree that in light of the risks and expenses associated with continued litigation, this Settlement is fair, adequate, and reasonable, and that it is in the best interest of the Class Members.

### 3. Has the Court decided who is right?

The Court hasn't decided whether GDIT or the Plaintiff is correct. GDIT and the Plaintiff reached a settlement by mediating the case with a neutral third party, for the sole purpose of resolving the matter and with no admission of liability or wrongdoing by GDIT.

## THE SETTLEMENT BENEFITS—WHAT YOU GET

### 4. What does the settlement provide?

Subject to Court approval, under the terms of the Settlement, GDIT agreed to pay $900,000 ("Maximum Settlement Amount") to settle all claims at issue of Plaintiff, Class Members and Class Counsel. Portions of the Maximum Settlement Amount will be used to pay Class Counsel's attorneys' fees and costs, Plaintiff's Service Enhancement award, the costs of the Settlement Administration, and payments to the State of California Labor and Workforce Development Agency ("LWDA") and PAGA Members for PAGA penalties. The remainder of the Maximum Settlement Amount will be available to pay money to the Class Members who do not exclude themselves from the class. Specifically, the Maximum Settlement Amount will be allocated as follows:

1) **Class Counsel's Attorneys' Fees and Costs.** Class Counsel will ask the Court to award attorneys' fees to compensate them for the work performed for the benefit of the Class up to $300,000, or 33 1/3% of the Maximum Settlement Amount. Class Counsel will separately ask the Court to reimburse litigation costs up to $15,000.
2) **Class Representative Service Enhancement Award to Plaintiff.** Class Counsel will ask the Court to authorize a Service Enhancement award of up to $10,000 for Plaintiff.
3) **PAGA Penalty Payments.** Class Counsel will ask the Court to authorize a payment of $33,750 to the California LWDA and a collective payment of $11,250 to the PAGA Members to settle claims alleged under PAGA.
4) **Settlement Administration Expenses.** Class Counsel will ask the Court to reimburse the Settlement Administrator, CPT Group, Inc., for the costs incurred in administering the proposed Settlement ("Settlement Administration Expenses"), estimated to be no more than $13,200.
5) **Payments to Class Members.** The amounts described in No. 1-4 above all will be subtracted from the Maximum Settlement Amount, and the amount remaining will constitute the Net Settlement Amount. The Net Settlement Amount will then be

allocated for distribution under the procedure described below to Class Members who do not exclude themselves from the Settlement.

Class Members who do not submit a timely written request for exclusion from the settlement ("Settlement Class Members") will receive a share of the Net Settlement Amount (the "Class Settlement Payment"). From the Net Settlement Amount, payments in the amount of $200 shall be allocated for each Settlement Class Member that is a former GDIT employee as of xxx xx, 2021[Preliminary approval] and whose employment with GDIT was terminated between July 23, 2016 and xxx xx, 2021 [Preliminary Approval Date], estimated to be $61,000 total. The remaining Net Settlement Amount is referred to as the "Workweek Fund" and will be paid to the Settlement Class Members based on their workweeks from July 23, 2015 through xxx xx, 2021 [Preliminary Approval Date] in which they worked for GDIT in a non-exempt job position in California ("Covered Class Workweeks"). Payments from the Workweek Fund will be distributed as follows:

Class Members shall be allocated three (3) points of credit for each Covered Class Workweek in which they worked overtime hours, i.e., more than 8 hours in a day or 40 hours in a week, and one (1) point of credit for each Covered Class Workweek in which they did not work overtime hours, from July 23, 2015 to xxs xx, 2021 [Preliminary approval].
The number of points of all Class Members are added together, then divided by the number of points for each Class Member, to determine each Class Member's percentage share of the Workweek Fund. Each Class Member's percentage is then multiplied by the Workweek Fund to determine each Class Member's estimated individual settlement payment.

The PAGA Group Payment will be divided among PAGA Members based on the number of biweekly pay periods each PAGA Member worked compared to the number of biweekly pay periods worked by all PAGA Members, including those who opt out of the class action settlement.

**Tax Treatment of Settlement Payments**

Class Settlement Payments will be allocated as follows: 1/2 to unpaid wages, with all applicable taxes withheld, for which an IRS Form W-2 shall be issued, and 1/2 to non-wage recovery, including interest and penalties, for which an IRS Form 1099 shall be issued. GDIT will pay its share of payroll taxes on the amounts allocated as unpaid wages.

Payments to PAGA Members from the PAGA Group Payment are treated as civil penalties, not wages, for tax purposes, for which an IRS Form 1099 shall be issued.

You should consult with a tax advisor concerning the tax consequences of the payment(s) you receive under the Settlement.

<u>**Your Weeks Worked and Estimated Individual Settlement Payment:**</u>

The settlement covers all workweeks from July 23, 2015 through _____ in which a Class Member worked for GDIT in a non-exempt job in California. According to GDIT's

4



records, you worked in a non-exempt job in California within this time period during the following dates:

- _____ to _____.

The PAGA portion of the settlement covers all biweekly pay periods from June 26, 2018 through _____ in which a Class Member worked for GDIT in a non-exempt job position at a work location in California.  According to GDIT's records, you worked in a non-exempt job in California within this time period during the following dates:

- _____ to _____.

Based on your work dates, the approximate amount of your recovery is: $_____. This amount may change depending on participation in the settlement by all Class Members (*e.g.*, if a Class Member opts out of the settlement, your amount may increase by a percentage of those settlement proceeds).  If you are a PAGA Member, your estimated recovery for the PAGA portion of the settlement is:  $_____.

### Procedure for Disputing Information

If you want to dispute your number of estimated workweeks or pay periods, you need to provide written evidence supporting your claim by _____, and send to:

[administrator]
[address, tel and fax]

GDIT's records are presumed to be correct unless you provide documentation to the Settlement Administrator that demonstrates otherwise.  The Settlement Administrator will evaluate the evidence submitted by you and make the final decision as to whether you may be entitled to any additional settlement payment amount.

### 5.    What am I giving up in exchange for the settlement benefits?

### Release by Class Members

In exchange for receiving payments under the Settlement, Plaintiff and each Class Member who has not opted out of the Settlement (which would include you) shall be deemed to have fully, finally, and forever released GDIT Releasees[1] from all Released Class Claims through _____, including unknown Released Class Claims to the fullest extent permitted by law.  Released Class Claims are any and all claims, obligations, demands, actions, rights, causes of action, and liabilities against GDIT Releasees, whether in law or equity, that have been asserted in the Complaint, or could have been asserted in the Complaint based on the facts and

---

[1] "GDIT Releasees" means GDIT and all of its former, current, and future related organizations, companies, divisions, subsidiaries, affiliates, insurers, and parents, and each of their respective predecessors, successors, and assigns, as well as each of their respective former, current and future directors, officers, employees, agents, representatives, attorneys, fiduciaries, assigns, heirs, executors, administrators, beneficiaries, benefit plans, plan administrators, insurers and trustees.

allegations pled, and including all such claims for recovery of compensation, and/or all penalties under the California Labor Code and California's Wage Orders, the California Business & Professions Code, from July 23, 2015 through _____. All Settlement Class Members shall be bound by the release, unless they timely opt-out as explained below.

**Release by PAGA Members**

Plaintiff on behalf of himself and on behalf of the LWDA and each and every PAGA Member, shall be deemed to have fully, finally, and forever released each and all of the GDIT Releasees from all Released PAGA Claims, including unknown Released PAGA Claims to the fullest extent permitted by law.  Released PAGA Claims are any and all claims against GDIT Releasees for civil penalties and other relief under PAGA, that have been asserted in the Complaint, or could have been asserted in the Complaint based on the facts and allegations pled, from June 26, 2018 through _____.  All PAGA Members shall be bound by the release as to any Released PAGA claims even if they have opted out of the Settlement Class.

## HOW TO GET A SETTLEMENT PAYMENT

### 6.   How do I get a settlement payment?

If the Settlement receives final approval by the Court, and you do not opt out, you will be mailed a check for your Class Settlement Payment at the address where this notice was mailed (unless you timely provide a forwarding address to the Settlement Administrator).  If you are a PAGA Member, you will be mailed a check for your share of the PAGA Group Payment even if you opted out of the class Settlement.

### 7.   When will I get my check?

The Court has scheduled a Final Approval Hearing on _____, at _____.  If the Court approves the Settlement, and there are no appeals, the Settlement Administrator will mail you your payment approximately two months after that.  If there are any appeals of the approval order, your payment may be delayed until all appeals are resolved and the settlement becomes effective.

You will only have 120 days from the date  the check is issued to cash it.  After 120 calendar days from the date of mailing, the checks shall become null and void.  Within 30 days after that, any uncashed amounts from your settlement check will be sent to the Controller of the State of California as Unclaimed Property to be held in your name.

## EXCLUDING YOURSELF FROM THE SETTLEMENT

### 8.   How do I ask the Court to exclude me from the Settlement Class?

You may only request exclusion from the class action portion of the settlement.  You may not opt out of the PAGA portion of the settlement.

Class Members who wish to "opt out" of and be excluded from the class action settlement must submit to the Settlement Administrator a written Request for Exclusion that must be post-marked

no later than _____. The Request for Exclusion must: (a) include your name, the last four digits of your social security number, and your signature; and (b) indicate that you desire to exclude yourself from the class action settlement.

If you submit a timely and valid Request for Exclusion, you will no longer be a member of the Class, and you will not be eligible to receive any of the Class Member benefits under the Settlement or object to the terms of the Settlement. You will not be bound by the non-PAGA terms of the Settlement, and may pursue any individual claims you may have, at your own expense, against GDIT. If you are a PAGA Member, you will still receive a check with your share of the PAGA Group Payment allocated to settle PAGA Members' claims for civil penalties and you will be bound by the release as to the Released PAGA Claims.

Requests for Exclusion that do not include all required information or that are not timely submitted are ineffective. If you do not submit a valid and timely Request for Exclusion on or before _____, and if the Court grants final approval of the settlement, you will be bound by the Settlement and its releases of the Released Class Claims and you will be considered a Settlement Class Member for settlement distribution purposes.

### 9. If I don't exclude myself, can I sue later?

No. Unless you exclude yourself from the non-PAGA portion of the Settlement, you will be bound by all the terms of the Settlement, including the waiver and release of all Released Class Claims relating to the Action as set forth above, and you will be prevented from suing GDIT Releasees or participating in any other litigation or class action relating to the matters being settled in this Action, if the Court grants final approval of the settlement. Regardless of whether you exclude yourself from the non-PAGA portion of the Settlement, if you are a PAGA Member, you will be bound by the Released PAGA Claims and you will be prevented from suing GDIT Releasees or participating in any other litigation or representative action relating to the Released PAGA Claims.

## THE LAWYERS REPRESENTING YOU

### 10. Do I have a lawyer in this case?

Yes. The Court has decided that the following lawyers are qualified to represent you and all Class Members for purposes of this Settlement. This means they have been appointed to serve as Class Counsel and represent the Class Members You will not be charged for the work performed by Class Counsel. Class Counsel's contact information is as follows:

COHELAN KHOURY & SINGER
Jeff Geraci
605 C Street, Suite 200
San Diego, CA 92101
Tel:   (888) 808-8358
Fax:   (619) 595-3000
matlas@ckslaw.com
jgeraci@ckslaw.com

FERRARO VEGA EMPLOYMENT LAWYERS, INC.
Nicholas J. Ferraro
2305 Historic Decatur Road, Suite 100
San Diego, CA 92106
Tel:   (619) 693-7727
nick@ferrarovega.com

### 11. How will the costs of the lawsuit and the settlement be paid?

You will not be charged for any costs. The lawyers will request the Court award their fees and reimburse their advancement of litigation expenses, from the Maximum Settlement Amount. Subject to court approval, Class Counsel will ask the Court to award attorneys' fees to compensate them for the work performed for the benefit of the Class up to $300,000 or 33 1/3% of the Maximum Settlement Amount. Class Counsel also will ask the Court to reimburse litigation costs up to $15,000.

In addition, and subject to Court approval, Class Counsel will ask the Court to authorize a Service Enhancement award of up to $10,000 for Plaintiff for his work and effort in prosecuting this case, for undertaking the risks of payment of costs (in the event the outcome of this Action was not favorable) and a general release of all claims.

The Court may award less than these amounts. If lesser amounts are awarded, those unawarded amounts may be added to the Net Settlement Amount for distribution to Settlement Class Members. However, if Plaintiff and Class Counsel appeal an order awarding lesser amounts, then any amount not approved by the Court after the resolution of the appeal will be donated as a charitable contribution.

## OBJECTING TO THE SETTLEMENT

### 12. How do I object to the Settlement?

You may object only as to the class action portion of the settlement and only if you do not submit a Request for Exclusion ("opt out") from the settlement. If you do not wish to opt out of the settlement but disagree with any portion of the class action settlement terms, you have the right to file an objection. If you opt out of the class action settlement, you will be ineligible to object to any aspect of the settlement.

You may not object to the PAGA portion of the settlement under any circumstances, whether or not you have opted out of the class action settlement. This means that if you qualify as a PAGA Member, you automatically will be bound by the PAGA portion of the settlement if the Court grants final approval of the settlement.

If you are a Class Member, you can object to the Settlement and you can give reasons for why you think the Court should not approve it. The Court will consider your views. To object, you must mail your objection to the Settlement Administrator no later than _____. Your written objection must: (a) contain your name, address, telephone number, and the last four digits of your Social Security number; (b) state the case name and number: *Loreto v. General Dynamics Information Technology, Inc.*, Case No. 3:19-cv-01366-GPC-MSB; (c) state the specific reason for your objection including any legal support; (d) state whether you or someone on your behalf intends to appear at the final approval hearing; and (e) contain your signature.

If you do not object in the manner described above, you shall be deemed to have waived any objections to the proposed Settlement, including its fairness or adequacy, the payment of attorneys' fees or litigation costs to Class Counsel, the Service Enhancement award to Plaintiff, and any and all other aspects of the Settlement.

**13. What's the difference between objecting and asking to be excluded?**

You cannot both exclude yourself and object.  You can do one or the other, or neither.  Objecting is simply telling the Court you do not like something about the Settlement.  You can object to the class action portion of the settlement only if you remain a Class Member.  Excluding yourself is telling the Court that you do not want to be part of the Settlement Class.  If you exclude yourself, you have no basis to object because the class action settlement no longer affects you.

## THE COURT'S FINAL APPROVAL HEARING

The Court will hold a hearing to decide whether to approve the Settlement.  You may attend the hearing and you may ask to speak, but you do not have to attend.

**14. When and where will the Court decide whether to approve the settlement?**

The Court will hold a Final Approval Hearing on _____ at _____, in Courtroom 2D, 2nd floor, at the District Court for the Southern District of California, Edward J. Schwartz Courthouse, located at 221 West Broadway, San Diego, CA 92101.  At this hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate.  If there are Objections, the Court will consider them.  After the hearing, the Court will decide whether to approve the Settlement. There is no time limit for the Court to make its decision.

**Note:  The Court may change the date of the final approval hearing without further notice to the Settlement Class.** Any Class Member who returns a written objection letter will be notified by Class Counsel of any rescheduling of the date and time of the Final Approval Hearing.

**15. Do I have to come to the hearing?**

No.  Counsel for the parties will answer any questions the judge may have.  You may attend the hearing and you may ask to speak, but you do not have to attend.

If you submit an objection, you do not have to come to Court to talk about it, but you can come if you wish.  As long as you mailed a valid objection on time, the Court will consider it.  You also may hire and pay another lawyer besides Class Counsel to attend, but it is not required. Class Counsel will not represent you in connection with any objection you submitted.

## IF YOU DO NOTHING

**16. What happens if I do nothing at all?**

If you do nothing, you automatically will receive your Class Settlement Payment from the Net Settlement Amount after the Court has granted final approval as well as your share of the PAGA Group Payment if you are a PAGA Member.  If you never cash your settlement check(s), you nevertheless will be bound by all the terms of the Settlement, including the waiver and release of all Released Class Claims relating to the Action as set forth above, and, if you are a PAGA

Member, the waiver and release of all Released PAGA Claims relating to the Action as set forth above.

## **GETTING MORE INFORMATION**

**17. How do I get more information?**

This Notice summarizes the Settlement.  This Notice does not contain all of the terms of the proposed Settlement or all of the details of these proceedings.  For more detailed information, you are advised to refer to the underlying documents and papers on file with the Court.

You may visit the _____ website at [admin website] where you will find specific documents related to this case and be able to access the Notice and other forms.  There is no charge to view the documents on the website.

You may also contact Class Counsel  or Counsel for GDIT for information about this lawsuit.

Write or email Class Counsel at:

<table>
<tr><td>Jeff Geraci</td><td>Nicholas J. Ferraro</td></tr>
<tr><td>COHELAN KHOURY & SINGER</td><td>FERRARO VEGA EMPLOYMENT</td></tr>
<tr><td>605 C Street, Suite 200</td><td>LAWYERS, INC.</td></tr>
<tr><td>San Diego, CA 92101</td><td>2305 Historic Decatur Road, Suite 100</td></tr>
<tr><td>Tel:    (888) 808-8358</td><td>San Diego, CA 92106</td></tr>
<tr><td>Fax:   (619) 595-3000</td><td>Tel:    (619) 693-7727</td></tr>
<tr><td>jgeraci@ckslaw.com</td><td>nick@ferrarovega.com</td></tr>
</table>

Write or email Counsel for GDIT at:

Carrie A. Gonell
Morgan, Lewis & Bockius LLP
600 Anton Boulevard, Suite 1800
Costa Mesa, CA 92626
Tel:    (714) 830.0600
Fax:    (714) 830.0700
carrie.gonell@morganlewis.com

You may also contact the Settlement Administrator at

[Settlement Administrator]
[insert info]

**Do not call, write, or otherwise contact the Court or the Court Clerk's Office to ask about this settlement process.**

# EXHIBIT B

**COHELAN KHOURY & SINGER**
Isam C. Khoury (SBN 58759)
ikhoury@ckslaw.com
Michael D. Singer (SBN 115301)
msinger@ckslaw.com
Jeff Geraci (SBN 151519)
jgeraci@ckslaw.com
605 C Street, Suite 200
San Diego, CA 92101
Telephone: (619) 595-3001/Fax: (619) 595-3000

**FERRARO VEGA EMPLOYMENT LAW, INC.**
Nicholas J. Ferraro (SBN 306528)
nick@ferrarovega.com
2305 Historic Decatur Road, Suite 100
San Diego, CA 92106
Telephone: (619) 693-7727

Attorneys for Plaintiff Jose Loreto, on behalf of himself
and all others similarly situated

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE LORETO, on behalf of himself and all others similarly situated,<br><br>Plaintiff<br><br>v.<br><br>GENERAL DYNAMICS INFORMATION TECHNOLOGY, INC., a Virginia Corporation; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 19cv1366-GPC-MSB<br><br>**SECOND AMENDED CLASS ACTION**<br><br>1. **Failure to Pay Overtime Wages (Lab. Code § 1194)**<br><br>2. **Failure to Timely Pay Wages at Separation (Lab. Code §§ 201-203)**<br><br>3. **Failure to Provide Accurate Itemized Wage Statements (Lab. Code §§ 226(a) and (b))**<br><br>4. **Failure to Provide All Premium Wages (Lab. Code § 226.7)**<br><br>5. **Violation of Unfair Business** |

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

Practices Act (Bus. & Prof. Code §§ 17200-17208)

6. **PAGA Penalties for Failure to Pay Overtime Wages**

7. **PAGA Penalties for Failure to Timely Pay Wages at Separation**

8. **PAGA Penalties for Failure to Provide Accurate Itemized Wage Statements**

9. **PAGA Penalties for Failure to Provide All Premium Wages**

**DEMAND FOR JURY TRIAL**



COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

Plaintiff JOSE LORETO ("Plaintiff"), on behalf of himself, and all others similarly situated, complains and alleges as follows:

## **INTRODUCTION**

1.    This is a class action against Defendant GENERAL DYNAMICS INFORMATION TECHNOLOGY, INC. and DOES 1-10 (collectively "Defendants" or "GDIT"). Plaintiff brings this action on behalf of himself and all other non-exempt employees of Defendant who worked in California ("Class Members") at any time during the four years preceding the filing of this action through the time the time of trial ("Class Period").

2.    During the Class Period, Defendants had a consistent policy of not accurately calculating the regular rate of pay for non-exempt employees because they failed to add all remuneration earned, included bonuses, cash in lieu of benefits, and other amounts, in violation of California and federal wage and hour laws.

3.    Plaintiff has given notice of these claims to the California Labor and Workforce Development Agency ("LWDA"). There was no LWDA intervention within 65 days of that notice, and no notice of cure by Defendants. Plaintiff asserts claims for civil penalties as a representative of the State of California, as authorized by the Private Attorneys General Act ("PAGA"), Labor Code sections 2698, *et seq.*, and to the extent permitted by law, on behalf of the aggrieved employees who held the positions identified and suffered one or more of the violations alleged. Labor Code section 2699.3(a)(2)(C). A true and correct copy of the June 26, 2019 Notice showing compliance with Labor Code section 2699.3 is attached as **Exhibit 1** and demonstrates Plaintiff is an aggrieved employee and has standing to bring a representative action on behalf of the State of California and the LWDA and as a private attorney general.

## **JURISDICTION AND VENUE**

4.    This Court has diversity subject matter jurisdiction pursuant to 28

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

- 1 -

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

U.S.C. section 1332(d)(2) as amended by the Class Action Fairness Act of 2005, because at least some members of the proposed class have different citizenship from some defendants, and the claims of the proposed class members exceed five million dollars ($5,000,000) in the aggregate.

5.    Diversity of citizenship exists between Plaintiff Jose Loreto, a citizen of California, and Defendant GDIT, a Virginia corporation.

6.    The exact damages of Plaintiff and the Class are unknown, but Plaintiff reasonably believes they exceed $5,000,000 in the aggregate.

7.    This Court has personal jurisdiction over Defendants because Defendants purposefully availed themselves of the privilege of conducting business in the State of California, in this judicial district.

8.    Venue is proper in this district because a substantial part of the events and omissions giving rise to the claims occurred in this district. Venue is proper in this district also because there is personal jurisdiction in this district over Defendants. Presently and at all relevant times, Defendants have conducted substantial, continuous, and systematic commercial activities in this district.

## PARTIES

**A.    The Plaintiff**

9.    Plaintiff Jose Loreto is over the age of 18, and at all relevant times, a California citizen.

**B.    The Defendants**

10.    Plaintiff is informed, believes, and alleges: Defendant General Dynamics Information Technology, Inc. is a Virginia corporation, which conducts business in the County of San Diego, and was the employer of Plaintiff and Class Members during the Class Period.

11.    The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants sued as DOES 1 through 10, inclusive, are unknown to Plaintiff, who sues Defendants by such fictitious names under Code

- 2 -

of Civil Procedure section 474. Plaintiff is informed and believes, and alleges, each of DOE Defendant is legally responsible in some manner for the unlawful acts alleged. Plaintiff will seek leave of court to amend this Complaint to reflect the true names and capacities of DOE Defendants when known.

12.    Plaintiff is informed, believes, and alleges each Defendant acted in relation to this action as the agent of the others, carried out a joint scheme, plan or policy, and the acts of each Defendant are legally attributable to the others.

## GENERAL ALLEGATIONS APPLICABLE TO ALL CLAIMS

13.    At all times during the Class Period, Defendants conducted business and employed Plaintiff and Class members in San Diego County, California.

14.    Plaintiff and Class Members were non-exempt employees, covered by Defendants' policies and Industrial Welfare Commission ("IWC") Wage Orders, including 7-2001, Labor Code section 1194, and/or other orders, regulations, and statutes throughout the Class Period.

## PLAINTIFF'S EXPERIENCE

15.    Plaintiff was employed by GDIT in San Diego County, California as a Maintenance Technician, and later a Maintenance Worker, from February 2016 through the present.

16.    Plaintiff was classified as a non-exempt employee by Defendants throughout his employment and was paid cash in lieu of benefits each pay period.

17.    Defendants paid Plaintiff a lump sum payment of about $290 each pay period. The payment varies based on unidentified factors and is purportedly provided as cash in lieu of benefits. This payment is listed as "HEALTH WELF BENEFT" on Plaintiff's wage statements. Plaintiff believes he receives this payment because he opted out of Defendants' company-provided health insurance coverage.

18.    Plaintiff further alleges Defendants may provide cash in lieu of benefits payments to employees which may bear the same or different description

on each aggrieved employee's wage statement.

19.    Plaintiff also receives a nominal "LTD CREDIT," described as a "Taxable Fringe Benefit" on his wage statements. Like the "HEALTH WELF BENEFT," the "LTD CREDIT" is not included in his regular rate of pay for purposes of overtime wages, meal and rest period premium wages, and any other wages based on the regular rate of pay. The "LTD CREDIT" is another example of remuneration Defendants do not include in Plaintiff's regular rate of pay.

20.    In pay periods Plaintiff earned overtime or meal and rest period premiums, Defendants' calculated and paid Plaintiff based only on his hourly straight time rate, not his regular rate, which includes the "HEALTH WELF BENEFT" and the "LTD CREDIT." Defendants underpaid Plaintiff and Class Members by not including all forms of remuneration, including the "HEALTH WELF BENEFT" and "LTD CREDIT," in the regular rate of pay from 2016 through 2019.

21.    Defendants issued wage statements to Plaintiff and, on information and belief, other Class Members, with the incorrect name and address of the legal entity that is the employer, and inaccurately state the gross wages, total hours worked, net wages earned, applicable hourly rates in effect and the number of hours worked at each hourly rate. These wage statement defects are the result of Defendants' failure to pay overtime and meal and rest period premiums at the regular rate of pay, thus rendering the wage statement total amounts inaccurate.

22.    Defendants' wage statements fail to include pay for all overtime wages and premiums at the lawful regular rate of pay, which render the wage statements inaccurate, incomplete, and unlawful.

23.    Many of Defendants' wage statements, for example for the period ending April 26, 2019, do not include the applicable hourly rates in effect and the corresponding number of hours worked at each hourly rate, thus rendering the wage statements inaccurate and confusing to Plaintiff and Class Members.

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

- 4 -

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

24.    Defendants fail to show the overtime rate payable to Plaintiff and other similarly-situated employees on each wage statement. Defendants categorize certain hours as "Overtime Strght Time," state the number of hours worked in that wage category, but fail to show the applicable hourly rate in effect for overtime. Similarly, the wage statements show an "Overtime Premium" category, state the number of hours worked, but fail to show the hourly rate. Defendants list under the "Rate" section of some wage statements issued to Plaintiff numerals such as "17.20" and "8.60" without further description, although other entries include the symbol "$" to make clear the number refers to an amount of money.

25.    Defendants' wage statements incorrectly state the total hours worked by Plaintiff and other aggrieved employees. For example, on Plaintiff's wage statement for the pay date March 7, 2019, Defendants list "88.00" total hours worked, but include hours listed in both the "Overtime Strght Time" and "Overtime Premium" categories. This overstates Plaintiff's hours worked. In this pay period, for example, Plaintiff worked only 4.0 hours of recorded overtime, yet total hours worked show double that amount.

26.    Defendants' wage statement violations fail to include paid sick leave accruals and balance in violation of California Labor Code section 246.

27.    Plaintiff is informed and believes, and alleges, Defendants knew or should have known Plaintiff and Class Members were entitled to receive all meal periods or payment of one additional hour of pay at their respective regular rate of pay when they did not receive a compliant meal period. In violation of the Labor Code and IWC Wage Orders, Plaintiff and Class Members did not receive all meal periods or payment of one additional hour of pay at their regular rate of pay when they did not receive a compliant meal period.

28.    Plaintiff is informed, and believes, and alleges, Defendants knew or should have known Plaintiff and Class Members were entitled to receive all rest breaks or payment of one additional hour of pay at the regular rate of pay when

they did not receive a compliant rest period. In violation of the Labor Code and IWC Wage Orders, Plaintiff and Class Members did not receive all rest breaks or one additional hour of pay when they did not receive a compliant rest period.

29.    Plaintiff brings this action on behalf of himself and all similarly-situated persons in California. Code of Civil Procedure section 382. The Class Plaintiff seeks to represent is defined as:

> **Plaintiff Class**
>
> All Defendants' non-exempt California employees employed at any time during the period four (4) years before the filing of the Complaint to the time of trial.

30.    Plaintiff seeks to certify a subclass of employees defined as:

> **California Overtime Subclass**
>
> All Plaintiff Class members who were not paid all overtime wages at the correct regular rate of pay for hours worked over eight (8) hours per day or forty (40) hours per week.

31.    Plaintiff seeks to certify a subclass of employees defined as:

> **Waiting Time Subclass**
>
> All Plaintiff Class members to whom Defendants failed to pay all wages due to them upon termination or resignation.

32.    Plaintiff seeks to certify a subclass of employees defined as:

> **Wage Statement Subclass**
>
> All members of the Plaintiff Class to whom Defendants improperly failed to provide accurate itemized wage statements under Labor Code § 226(b).

33.    Plaintiff seeks to certify a subclass of employees defined as:

> **Premium Wage Subclass**

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

All members of the Plaintiff Class who were paid premium wages for a meal period not provided or a rest period not permitted or authorized.

34.    Plaintiff seeks to certify a subclass of employees defined as:

**UCL Subclass**

All members of the California Overtime Subclass.

35.    This action has been brought and may be maintained as a class action pursuant because there is a well-defined common interest of many persons and it is impractical to bring them all before the court. Code of Civil Procedure § 382. Plaintiff reserves the right to modify the Class description or further divide it into subclasses or limit it to particular issues. California Rules of Court, Rule 3.765(b).

36.    **Ascertainability**: The proposed Class and Subclasses are ascertainable because they can be identified and located using Defendants' payroll and personnel records.

37.    **Numerosity**: The potential members of the Plaintiff Class and Subclasses as defined is so numerous that joinder of all members would be infeasible and impractical. The disposition of their claims through this class action will benefit both the parties and this Court. The number of members of the Plaintiff Class and Subclasses is unknown to Plaintiff, but is estimated to be in excess of 100 individuals. The number and identity of members can be readily ascertained using Defendants' records.

38.    **Typicality**: Plaintiff's claims are typical of the Plaintiff Class and Subclass Member's because all sustained similar injuries and damages arising out of Defendants' common course of conduct in violation of law and the injuries and damages of all members of the Plaintiff Class and Subclasses were caused by Defendants' wrongful conduct in violation of law, as alleged.

39.    **Adequacy**: Plaintiff is an adequate representative of the Plaintiff Class and Subclasses, will fairly protect the interests of Plaintiff Class and

Second Amended Class Action Complaint Case No. 19CV1366-GPC-MSB

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

Subclass members, has no interests antagonistic to Plaintiff Class and Subclass members, and will vigorously pursue this suit. Plaintiff's attorneys are competent, skilled, and experienced in litigating large employment law class actions.

40.     **Superiority**:  A class action is superior to other available means for the fair and efficient adjudication of this controversy. Each Class Member has been damaged, and is entitled to recovery, by Defendants' unlawful policies. A Class action will allow litigation of claims in the most efficient and economical manner for the parties and judicial system. Plaintiff is unaware of any likely difficulties in managing this action that precludes a class action.

41.     The predominating common questions of law and fact include:

a.  Whether Defendants violated the law by failing to properly calculate Plaintiff Class Members' regular rate of pay;

b.  Whether Defendants violated California law by failing to properly compensate Plaintiff Class Members for all overtime hours;

c.  Whether Defendants violated California law by failing to properly compensate Plaintiff Class Members for all compensation based on the regular rate of pay;

d.  Whether Defendants violated section 226 by failing to provide Plaintiff Class Members with accurate itemized wage statements;

e.   Whether the Plaintiff Class is entitled to waiting time penalties under Section 203;

f.  Whether Defendants violated Labor Code sections 203, 226, and1194; IWC Wage Order 7-2001; and other applicable IWC Wage Orders, and whether that establishes a violation of fundamental public policy;

g.  Whether Plaintiff Class and Subclasses are entitled to equitable relief pursuant to Business and Professions Code, sections 17200, *et seq.*

- 8 -

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### Failure to Pay Overtime Wages [Labor Code § 1194]
### (Plaintiff and the California Overtime Subclass against Each Defendant)

42.    Plaintiff incorporates the preceding paragraphs of this Complaint.

43.    Defendants employed Plaintiff and Class Members to work, and they did work, in excess of eight hours per day and forty hours per week.

44.    Defendants failed to pay Plaintiff and Class Members for work in excess of eight hours per day and forty hours per week at one- and one-half times the regular rate of pay in violation of Labor Code section 1194.

45.    Defendants' unlawful acts deprived Plaintiff and Class Members of overtime wages in amounts to be determined at trial, and they are entitled to recover these amounts, along with interest, attorneys' fees, and costs.

### SECOND CAUSE OF ACTION
### Failure to Pay Wages Due at Termination [Labor Code § 203]
### (Plaintiff and the Waiting Time Subclass against Each Defendant)

46.    Plaintiff incorporates the preceding paragraphs of this Complaint.

47.    Defendants had a consistent and uniform policy, practice, and procedure of willfully failing to pay their employees all final wages due within the time required by law. Labor Code §§ 201 and 202. An employer that willfully fails to timely pay such wages must, as a penalty, continue to pay an employee's wages until the back wages are paid in full or an action is commenced. Labor Code § 203. The penalty cannot exceed 30 days of wages.

48.    Waiting Time Subclass Members no longer work for Defendants.

49.    Defendants knew wages were due them, but willfully failed to pay Waiting Time Subclass Members all wages due at termination or within seventy-two (72) hours of resignation, in violation of Labor Code section 203.

### THIRD CAUSE OF ACTION

- 9 -

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

**Failure to provide Itemized Wage Statements [Labor Code § 226(a)]**
**(Plaintiff and the Wage Statement Subclass against Each Defendant)**

50.    Plaintiff incorporates all preceding paragraphs of this Complaint.

51.    Defendants are required to provide wage statements itemizing all deductions from payment of wages and to accurately report, among other things, total hours worked by Plaintiff and proposed Class Members, and all hourly rates earned. Labor Code § 226. Defendants knowingly and intentionally failed to comply with this provision by, among other things, providing wage statements to Plaintiff and Class Members which failed to accurately set forth all compensation at the correct hourly rates earned.

52.     Based on Defendants' knowing and intentional failure to provide accurate itemized wage statements, Plaintiff Wage Statement Subclass members are entitled to actual damages or penalties not to exceed $4,000 for each employee together with interest and attorneys' fees and costs.

///

///

///

**FOURTH CAUSE OF ACTION**
**Failure to provide all Premium Wages [Labor Code § 226.7]**
**(Plaintiff and the Premium Wage Subclass against Each Defendant)**

53.    Plaintiff incorporates all preceding paragraphs of this Complaint.

54.    When their non-exempt employees are not provided compliant meal periods or are not authorized or permitted compliant rest periods, Defendants are required to pay such employees premium wages of one (1) hour of pay at their regular rate of compensation for each day the meal or rest period was not provided or permitted.

55.    Defendants failed to comply with Labor Code section 226.7 by failing to provide or correctly calculate Premium Wage Subclass Members'

regular rate for premium wages.

### FIFTH CAUSE OF ACTION
### Violations of the Unfair Competition Law
### [Business and Professions Code §§ 17200, *et seq.*]
### (Plaintiff and the Overtime and Premium Wage Subclasses
### against Each Defendant)

56.     Plaintiff incorporates all preceding paragraphs of this Complaint.

57.     Defendants' failure to pay Plaintiff and Class Members wages for all hours worked, and premium wages for non-compliant rest and meal periods, as required by Wage Orders and the Labor Code, constitutes unlawful activity prohibited by Business and Professions Code sections 17200, *et seq.*

58.     Defendants' actions constitute false, unfair, fraudulent, and deceptive practices, within the meaning of Business and Professions Code sections 17200, *et seq.*

59.     Plaintiff is entitled to an injunction, specific performance under Business and Professions Code section 17202, and other equitable relief against such unlawful practices in order to prevent future loss, for which there is no adequate remedy at law, and to avoid a multiplicity of lawsuits. Plaintiff brings this cause individually and as a member of the general public as a representative of all others subject to Defendants' unlawful acts and practices.

60.     This cause of action is brought as a cumulative remedy and is intended as an alternative remedy for restitution for Plaintiff, and each Plaintiff Class Member, for the four (4) year period before the filing of this Complaint, and as the primary remedy during the fourth year before the filing of this Complaint. Business and Professions Code § 17205.

61.     As a result of Defendants' unlawful and unfair business practice of failing to pay earned wages, each Plaintiff Class Member has suffered damages and is entitled to restitution in an amount according to proof.

62.     The illegal conduct alleged is continuing and there is no indication

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

- 11 -

Defendants will discontinue such activity. Plaintiff alleges if Defendants are not enjoined from the conduct set forth in this Complaint, they will continue to fail to pay all overtime, premium, and final wages as required by law.

63.    Plaintiff further requests the court issue a preliminary and permanent injunction prohibiting Defendants from continuing to fail to pay overtime wages at the lawful regular rate.

## SIXTH CAUSE OF ACTION
### PAGA Penalties for Failure to Pay Overtime Wages
### [Labor Code §§ 510, 558, 1194, 1194.2, 2699]
### (Plaintiff and Aggrieved Employees against Each Defendant)

64.    Plaintiff incorporates the preceding paragraphs of this Complaint.

65.    Defendants employed Plaintiff and Aggrieved Employees to work, and they did work, in excess of eight hours per day and forty hours per week.

66.    Defendants failed to pay Plaintiff and Aggrieved Employees for work in excess of eight hours per day and forty hours per week at one- and one-half times the regular rate of pay in violation of Labor Code sections 510 and 1194. As a result of Defendants' failure to pay overtime wages for hours worked in excess of eight hours per day and forty hour per week at one- and one-half times the regular rate of pay, Defendants are liable for civil penalties within the applicable limitations period of Labor Code section 2699(f)(2) for violations of Labor Code sections 510, 1194, and 1194.2 in the amount of $100 for each aggrieved employee per pay period for the initial violation and $200 for each subsequent violation, for Defendants' failure to pay Plaintiff and other Aggrieved Employees overtime wages, pursuant to Labor Code section 2699.

67.    Based on Defendants' failure to comply with the foregoing sections of the Labor Code and applicable IWC Wage Orders, Defendants are liable for all civil penalties, including those in the form of underpaid wages, pursuant to Labor Code section 558.

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

## SEVENTH CAUSE OF ACTION
### PAGA Penalties for Failure to Timely Pay Wages When Due
### [Labor Code §§ 201-204, 210, 1194.2, 1197.1, 2699]
### (Plaintiff and Aggrieved Employees against Each Defendant)

68.    Plaintiff incorporates the preceding paragraphs of this Complaint.

69.    Defendants had a consistent and uniform policy, practice, and procedure of willfully failing to pay their employees all final wages due within the time required by Labor Code sections 201 and 202. An employer that willfully fails to timely pay such wages must, as a penalty, continue to pay an employee's wages until the back wages are paid in full or an action is commenced. Labor Code § 203. The penalty cannot exceed 30 days of wages. Defendants failed to pay Aggrieved Employees who ended their employment with Defendants all wages due at termination or within seventy-two (72) hours of resignation, in violation of Labor Code section 203. Defendants are liable pursuant to Labor Code section 2699 in the amount of $100 for the initial violation per employee and $200 for each subsequent violation per employee per pay period.

70.    Defendants are liable for civil penalties under Labor Code section 1197.1 of $100 for the initial violation for each underpaid employee per pay period, plus $250 for each subsequent violation per employee per pay period, in addition to an amount sufficient to recover underpaid wages, liquidated damages pursuant to Labor Code section 1194.2 and waiting time penalties under Labor Code section 203.

71.    Defendants violated Labor Code section 204 and are liable for civil penalties under Labor Code section 210. Defendants violated Labor Code section 204 by not paying all wages and premiums owed at least twice each calendar month or no later than the next pay period for wages in excess of the normal work period (i.e., overtime). Defendants' policy and practice was to not pay premium wages for meal and rest periods and to underpay overtime by not including the required amounts in Plaintiff and other Aggrieved Employee's

regular rate of pay, in violation of Labor Code section 204.

72.    As a result of this violation, Defendants are liable pursuant to Labor Code section 210 for $100 for each failure to pay each employee pursuant to Labor Code section 204 and $200 for each subsequent violation (or any intentional or willful violation) per employee per pay period, plus 25 percent of the amount unlawfully withheld to each employee.

**EIGHTH CAUSE OF ACTION**
**PAGA Penalties for Failure to provide Itemized Wage Statements**
**[Labor Code §§ 226(a), 226.3, 2699]**
**(Plaintiff and Aggrieved Employees against Each Defendant)**

73.    Plaintiff incorporates the preceding paragraphs of this Complaint.

74.    Defendants are required to provide wage statements itemizing all deductions from payment of wages and to accurately report, among other things, total hours worked by Plaintiff and proposed Class Members, and all hourly rates earned. Labor Code § 226. Defendants knowingly and intentionally failed to comply with this provision by, among other things as set forth in this Complaint, providing wage statements to Plaintiff and Class Members which failed to accurately set forth all compensation at the correct hourly rates earned.

75.    Labor Code section 2699.5 provides that Section 2699.3(a) applies to any alleged violation of Labor Code section 226 and Defendants are liable for civil penalties accordingly.

76.    Labor Code section 226.3 provides for civil penalties for violations of Section 226. The civil penalty is $250 for the initial violation and $1,000 for each subsequent violation.

77.    Defendant violated Labor Code section 1174 by failing to maintain accurate records showing the hours worked daily by and the wages paid to each employee. As a result, Defendants are further liable to Plaintiff and the Aggrieved Employees for a civil penalty under Labor Code section 1174.5 of $500 per employee.

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

## NINTH CAUSE OF ACTION
### PAGA Penalties for Failure to provide all Premium Wages
### [Labor Code §§ 226.7, 512, 516, 2699]
### (Plaintiff and Aggrieved Employees against Each Defendant)

78.    Plaintiff incorporates all preceding paragraphs of this Complaint.

79.    When their Aggrieved Employees are not provided compliant meal periods or are not authorized or permitted compliant rest periods, Defendants are required to pay such employees premium wages of one (1) hour of pay at their regular rate of compensation for each day a compliant meal or rest period was not provided or permitted.

80.    Defendants failed to comply with Labor Code section 226.7 by failing to provide or correctly calculate Aggrieved Employees' regular rate for premium wages. In the process, Defendants violated Labor Code sections 512 and 516.

81.    Labor Code section 226.7 provides for civil penalties for violations of Section 226.7. The civil penalty is $100 for the initial violation and $200 for each subsequent violation.

///

///

## PRAYER FOR RELIEF

Plaintiff prays for judgment as follows:

A.    Determine this action may be maintained as a class action with Plaintiff as Class Representative and Plaintiff's counsel as Class Counsel;

B.    Determine this action may be maintained as a Representative Action under the PAGA, and Plaintiff and Plaintiff's counsel be provided with all enforcement capability as if the action were brought by the California Division of Labor Standards Enforcement;

C.    Attorneys' fees and costs pursuant to statute;

- 15 -

D.     Determine Defendants' failure to pay overtime and premium wages to Plaintiff and Class Members violates IWC Wage Orders, regulations, and statutes;

E.     Defendants be ordered to pay and judgment entered for overtime and premium wages for Plaintiff and Plaintiff Subclass Members, according to proof;

F.     Defendants be ordered to pay and judgment entered for Labor Code section 226 penalties to Plaintiff and each Plaintiff Subclass Member, according to proof;

G.     Defendants be ordered to pay and judgment entered for Labor Code section 203 penalties to Plaintiff and each Plaintiff Subclass Member, according to proof;

H.     Defendants be ordered to pay and judgment entered for civil penalties permitted by Labor Code section 2699, for unpaid overtime and premium wages to Plaintiff and Aggrieved Employees, according to proof;

I.     Defendants be ordered to pay and judgment entered for civil penalties permitted by Labor Code section 2699, for inaccurate itemized wage statement to Plaintiff and Aggrieved Employees, according to proof;

J.     Defendants be ordered to pay and judgment entered for civil penalties permitted by Labor Code section 2699, for failing to timely pay all final waged due to Plaintiff and Aggrieved Employees, according to proof;

K.     Defendants be ordered to pay all recoverable civil penalties for each of the Labor Code violations alleged in this Complaint;

L.     Defendants be found to have engaged in unfair competition in violation of Business and Professions Code section 17200 and be ordered to pay restitution to Plaintiff, and each Plaintiff Class Member, due to Defendants' unlawful and unfair competition, including disgorgement of wrongfully obtained profits, and wrongfully withheld wages, according to proof, and interest, under Business and Professions Code sections 17203 and 17204;

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

M.    Defendant be enjoined from further acts of unfair competition and specifically from failing to pay Class Members overtime wages;

N.    Plaintiff, Plaintiff Class Members, and Subclass Members be awarded attorneys' fees and costs pursuant to statute, including, but not limited to, Labor Code sections 1194, 2699, and Code of Civil Procedure section 1021.5;

O.    Determine the appropriate remedy to compensate Plaintiff, Plaintiff Members, and Subclass Members as required to promote fairness and justice, including but not limited procedures for compensation, and fluid recovery if appropriate;

P.    Prejudgment Interest; and

Q.    Any other relief the court deems proper.

COHELAN KHOURY & SINGER
FERRARO VEGA EMPLOYMENT LAW, INC.


Dated: March 10, 2021          By: s/ Jeff Geraci _____
Jeff Geraci, Esq.
Attorneys for Plaintiff Jose Loreto, on behalf of himself and all others similarly situated

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a jury trial of all claims triable as of right by jury.

COHELAN KHOURY & SINGER
FERRARO VEGA EMPLOYMENT LAW, INC.


Dated: March 10, 2021          By: s/ Jeff Geraci _____
Jeff Geraci, Esq.
Attorneys for Plaintiff Jose Loreto, on behalf of himself and all others similarly situated

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

# EXHIBIT 1



# FERRARO
## EMPLOYMENT LAW

NICHOLAS J. FERRARO
nick@ferraroemploymentlaw.com

June 26, 2019

**NOTICE OF LABOR CODE VIOLATIONS UNDER
LABOR CODE SECTIONS 2698 *et seq.***

**PAGA CLAIM NOTICE VIA ONLINE SUBMISSION**

California Labor and Workforce Development Agency

**PAGA NOTICE FILING FEE VIA U.S. MAIL**

Department of Industrial Relations
Accounting Unit
455 Golden Gate Avenue, Tenth Floor
San Francisco, California 94102

**VIA ELECTRONIC AND CERTIFIED U.S. MAIL (RETURN RECEIPT)**

General Dynamics Information
Technology, Inc.
c/o Valerie Hinton
Human Resources Director
3211 Jermantown Road
Fairfax, VA 22030
Valerie.Hinton@gdit.com

General Dynamics Corporation
c/o General Counsel
2941 Fairview Drive
Falls Church, VA 22042

National Steel and Shipbuilding Company
c/o General Counsel
2798 E Harbor Drive, MS 21-J
San Diego, CA 92113

Dear Labor Enforcement Officer:

Mr. Jose Loreto ("Claimant") intends to bring an action against General Dynamics Corporation, General Dynamics Information Technology, Inc., National Steel and Shipbuilding Company (dba General Dynamics NAASCO) and all other General Dynamics-affiliated divisions, departments, subsidiaries and related employer entities ("Defendants"), individually and on behalf of all other similarly-aggrieved employees under the Private Attorneys General Act of 2004, codified as California Labor Code sections 2698 *et seq.*

This letter provides written notice of Defendants' Labor Code violations and Claimant's right to recover penalties, wages, reimbursements, premiums, and all other recoverable amounts on behalf of all aggrieved employees. *See e.g., Huff v. Securitas Security Services USA, Inc.* (2018) 23 Cal.App.5th 745.

## FACTUAL STATEMENT

Claimant's wage statements identify "GD Information Technology, Inc.," a nonexistent entity, as his employer. However, based on the employment policies, practices and procedures applicable throughout Claimant's employment, Claimant has been employed by General Dynamics Corporation, General Dynamics Information Technology, Inc. and National Steel and Shipbuilding Company (dba General Dynamics NAASCO). Claimant worked as a Maintenance Technician, and later a Maintenance Worker, a non-exempt, hourly position, from approximately 2016 and continuing through June 2019.

Defendants have violated and are liable pursuant to, among other laws and regulations, California Labor Code sections 201-204, 210, 226, 226.3, 226.7, 246, 510, 511, 512, 512, 516, 558, 1174, 1174.5, 1175, 1194, 1194.2, 1197, and 1198 as follows:

Defendants pay Claimant a lump sum payment of around $290 each pay period. The payment varies based on unidentified factors and is purportedly provided as cash in lieu of benefits. This payment is listed as "HEALTH WELF BENEFT" on Claimant's wage statements. Claimant believes he receives this payment because he opted out of Defendants' company-provided health insurance and other benefit coverage. Claimant believes Defendants pay the "HEALTH WELF BENEFT" to other similarly-aggrieved employees. Claimant further alleges Defendants may provide other cash in lieu of benefits payments to employees which may bear the same or different description on each aggrieved employee's wage statement. All employees of Defendants that receive any cash in lieu of benefits payment including, but not limited to, the "HEALTH WELF BENEFT" are similarly-aggrieved employees to the extent those benefits were not included in each employee's regular rate of pay for purposes of overtime wages, meal and rest period premium wages, and any other wages or sums based on the regular rate of pay.

Claimant also receives a nominal "LTD CREDIT," described as a "Taxable Fringe Benefit" on his wage statements. Like the "HEALTH WELF BENEFT," the "LTD CREDIT" is not included in his regular rate of pay for purposes of overtime wages, meal and rest period premium wages, and any other wages based on the regular rate of pay. The "LTD CREDIT" is another example of remuneration Defendants do not include in Claimant's regular rate of pay.

In pay periods Claimant worked overtime or earns meal and rest period premium pay, Defendants' calculated and paid Claimant based only on his hourly straight time rate, not his regular rate, which includes the "HEALTH WELF BENEFT" and the "LTD CREDIT" Defendants underpaid Claimant and other aggrieved employees by not including

all forms of renumeration, including the "HEALTH WELF BENEFT" and "LTD CREDIT," in the regular rate of pay throughout at least 2018 and 2019.

Defendants' failure to pay Claimants and other aggrieved employees overtime based on the regular rate of pay violates California and federal law. *Flores v. City of San Gabriel* (2016) 824 F.3d 890 (discussing cash in lieu of benefits payment structures).

Defendants also failed to provide compliant meal and rest periods to Claimant and the other aggrieved employees. Claimant and other aggrieved employees routinely missed or received late, short, interrupted and deficient meal and rest periods based on Defendants' failure to ensure they had adequate time in their workday to take such breaks. When Claimant and other aggrieved employees did not receive a compliant meal or rest period, they were not paid premium wages as required by California law. Defendants' employment policies and practices effectively discouraged and prevented Claimant and other aggrieved employees from receiving meal and rest periods or premium wages in lieu of those breaks on a regular basis. Defendants' records will reveal the extent of this practice through sign in and sign out times and other electronic data.

To the extent meal or rest period premiums were paid to Claimant or the other aggrieved employees, they were not paid at the regular rate of pay/compensation based on Defendants' failure to include all forms of renumeration in the regular rate.

Because Defendants failed to pay all amounts owed to Claimant and other aggrieved employees for all hours worked (including premium pay), Defendants have failed to pay the minimum wage for such compensable time and have violated California law accordingly.

Because Defendants failed to pay all wages and premiums to Claimant and the other aggrieved employees, they failed to pay all amounts owed on each regularly scheduled payday. As a result, Defendants are separately liable to Claimant and the other aggrieved employees for the underpaid and untimely payment of wages and premiums.

Furthermore, because Defendants failed to pay all wages and premiums to Claimant and the other aggrieved employees, they failed to timely pay all amounts owed to Claimant and each aggrieved employee whose employment terminated. As a result, all aggrieved terminated employees are entitled to receive Labor Code penalties and waiting time penalties based on Defendants' failure to timely pay wages and benefits upon separation.

Defendants have not provided accurate or complete itemized wage statements to Claimant and other aggrieved employees in violation of Labor Code §§ 226 and 246.

First, because of the foregoing Labor Code violations—including Defendants' failure to pay meal and rest period premiums at the regular rate pay and Defendants' failure to include all forms of renumeration in the regular rate of pay to calculate overtime and other forms of wages—Defendants have inaccurately stated  gross wages earned, total hours

worked, net wages earned, and all applicable hourly rates in effect and the corresponding number of hours worked at each hourly rate on each wage statement.

Second, Defendants incorrectly list "GD Information Technology,Inc. (sic)" as the legal name of the employer for Claimant and other aggrieved employers on each wage statement. "GD Information Technology,Inc. (sic)" is erroneous and is not a corporate entity in existence.

Third, Defendants fail to show the overtime rate payable to Claimant and other similarly-aggrieved employees on each wage statement. Defendants categorize certain hours as "Overtime Straght Time," state the number of hours worked in that wage category, but fail to show the applicable hourly rate in effect for overtime. Similarly, the wage statements show an "Overtime Premium" category, state the number of hours worked, but fail to show the hourly rate. Defendants list under the "Rate" section of the wage statement for Claimant "17.20" and "8.60" without any further description.

Fourth, Defendants' wage statements incorrectly state the total hours worked by Claimant and other aggrieved employees. For example, on Claimant's wage statement for the pay date March 7, 2019, Defendants list "88.00" total hours worked, but include hours listed in both the "Overtime Straght Time" and "Overtime Premium" categories. This overstates Claimant's hours worked. In this pay period, for example, Claimant worked only 4.0 hours of recorded overtime, yet total hours worked show double that amount.

Finally, Defendants have not included the paid sick leave balance, use or accrual amount for Claimant's paid sick leave hours, as required by Labor Code section 246.

Based on these errors and inaccuracies in record-creation and recordkeeping, Defendants have failed to maintain accurate and complete records on behalf of Claimant and the other aggrieved employees showing the daily hours worked and wages paid to Claimant and other aggrieved employees.

Defendants wage statement violations cause significant confusion regarding hours worked, wages paid, and wages owed to each aggrieved employee. These violations are ongoing, systematic, and continuous.

## <u>LABOR CODE VIOLATIONS</u>

Claimant and others similarly situated are "aggrieved employees" within the meaning of California Labor Code sections 2698 *et seq*. Defendants are liable to Claimant, the other aggrieved employees, and the State of California in an amount according to proof pursuant to California Labor Code sections 558 and 2699(a) and (f), including, but not limited to:

(1) $100.00 for each initial violation for each failure to pay each employee and $200 for each subsequent violation or willful or intentional violation pursuant to Labor Code § 210 for each failure to pay each employee, plus 25% of the amount unlawfully withheld;

(2) $50.00 for each initial violation and $100 for each subsequent violation pursuant to Labor Code § 558 per employee per pay period, plus an amount sufficient to recover the unpaid wages owed to each aggrieved employee;

(3) $100.00 for each initial violation and $250.00 for each subsequent violation pursuant to Labor Code § 1197.1 per employee per pay period;

(4) $50 for each initial violation per pay period per employee and $100 for each subsequent violation pursuant to Labor Code § 226;

(4) $250.00 for each initial violation and $1,000.00 for each subsequent violation pursuant to Labor Code § 226.3 per employee per pay period; and/or

(5) $500 for each violation per employee pursuant to Labor Code § 1174.5;

(6) $100 for each underpaid employee per pay period and $250 for each underpaid employee per subsequent violation per pay period, plus an amount sufficient to recover underpaid wages, liquidated damages under Labor Code § 1194.2 and waiting time penalties under Labor Code § 203, which shall be paid directly to each aggrieved employee;

(7) $100.00 for each initial violation and $200 for each subsequent violation per employee per pay period for those violations of the Labor Code for which no civil penalty is specifically provided.

Because Defendants maintain all employment records for Claimant and the other aggrieved employees, Claimant anticipates further violations will be discovered when those records are produced.  Claimant will seek to recover all penalties based on those existing but presently unknown violations

## NOTICE OF LIABILITY FOR CATALYST ATTORNEYS' FEES

Defendants are notified any attempt to resolve this case must be conducted in coordination with Claimant's counsel to protect the interests of Claimant and the aggrieved employees. Failure to comply will expose Defendants to further liability and an award of catalyst attorneys' fees. *See Graham v. Diamler-Chrysler Corp.*, 34 Cal. 4th 553 (2004) (authorizing an award of catalyst attorneys' fees against defendants).

In the event the LWDA does not prosecute this action, this office will require Defendants to disclose any settlements or retroactive payments to aggrieved employees for based on any allegations asserted in this letter, along with all related and derivative claims.

Despite knowledge of the violations outlined in this letter, Defendants willfully failed to pay the amounts owed to Claimant and the aggrieved employees and any settlements paid to them after the date of this letter shall be deemed a proximate result of Claimant's pending and anticipated prosecution of such violations, and will require payment of all sums and penalties owed in addition to all attorneys' fees and costs.

This notice of Defendants' liability for catalyst attorneys' fees and penalties to the LWDA is required to protect the interests of Claimant, the aggrieved employees, LWDA, and State of California

## **<u>CONCLUSION</u>**

Claimant requests the LWDA initiate enforcement for the violations described in this letter. If the LWDA does not pursue enforcement, Claimant will pursue representative claims on behalf of the State of California and the aggrieved employees and will seek all remedies available for violations of the Labor Code and the Industrial Welfare Commission Wage Orders, including attorneys' fees, costs, interest and all available penalties set forth in Labor Code section 2699(f).

Thank you for your attention to this matter.

Sincerely,

*Nicholas J. Ferraro*

Nicholas J. Ferraro, Esq.

Cc    Co-Counsel:
       Jeff Geraci, Esq. (via email: jgeraci@ckslaw.com)

       Representative Aggrieved Employee
       Mr. Jose Loreto (via email)