UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE LORETO, on behalf of all others similarly situated,<br><br>                                    Plaintiff,<br><br>v.<br><br>GENERAL DYNAMICS INFORMATION TECHNOLOGY, INC., a Virginia Corporation, and DOES 1-10, inclusive,<br><br>                                    Defendants. | Case No.:  3:19-cv-01366-GPC-MSB<br><br>**ORDER GRANTING RENEWED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT**<br><br>**[ECF No. 49.]** |

Before the Court is Plaintiff's Renewed Motion for Preliminary Approval of Class Action Settlement.  ECF No. 49.  The Motion is unopposed.  On July 23, 2021, the Court held a hearing on this matter.  ECF No. 51.  For the reasons that follow, the Court GRANTS Plaintiff's Motion.

## I.   BACKGROUND

### A. Procedural History

On July 23, 2019, Plaintiff Jose Loreto ("Plaintiff") filed a putative class action and Fair Labor Standards Act ("FLSA") collective action complaint against Defendant

General Dynamics Information Technology, Inc. ("Defendant" or "GDIT") and Does 1 through 100.  ECF No. 1.  On September 5, 2019, Plaintiff filed his First Amended Complaint ("FAC"), which is the operative complaint in this case.  ECF No. 6 ("FAC"). In the FAC, Plaintiff alleges causes of action for: (1) failure to pay overtime wages under the FLSA, 29 U.S.C. §§ 201 et seq.; (2) failure to pay overtime wages under California Labor Code § 1194; (3) failure to timely pay wages at separation under California Labor Code §§ 201–203; (4) failure to provide accurate itemized wage statements under California Labor Code §§ 226(a) and (b); (5) failure to provide all premium wages under California Labor Code § 226.7; (6) violation of unfair business practices act, California Business and Professions Code §§ 17200–17208, along with Private Attorneys General Act ("PAGA") penalties for failure to pay overtime wages, timely pay wages at separation, provide accurate itemized wage statements, and provide all premium wages under California Labor Code §§ 2698 et seq.  *Id.*  Plaintiff alleges that as a non-exempt employee of GDIT in San Diego, he and other non-exempt employees receive lump sum payments not included the regular rate of pay, which results in the underpayment of overtime and premium wages, inaccurate wage statements, and failure to timely pay final wages to separated employees.  *Id.* ¶¶ 15–22, 56.  Plaintiff also alleges other defects in the wage statements that render them confusing or inaccurate.  *Id.* ¶¶ 23–26.

On October 15, 2019, Defendant filed an Answer to the FAC.  ECF No. 10.  On December 13, 2019, Magistrate Judge Michael S. Berg held an early neutral evaluation conference and the case did not settle.  ECF No. 17.  The parties subsequently agreed to participate in private mediation in the hopes of settling the case.  ECF No. 31 ¶ 6.  On August 17, 2020, after receiving leave of Court, Defendant filed an Amended Answer to the FAC.  ECF Nos. 35, 36.  On November 2, 2020, the parties filed a status report indicating that they had reached a settlement in principle through mediation.  ECF No. 37.

On March 10, 2021, Plaintiff filed a Motion for Preliminary Approval of Class Action Settlement.  ECF No. 43.  On May 7, 2021, after a hearing, the Court

provisionally certified the class and appointed class counsel but denied the motion for preliminary approval without prejudice. ECF No. 48. The Court found that although much of the settlement was likely able to be approved, the *cy pres* provision included in the settlement did not meet the Ninth Circuit standard and the Court required additional information to conclude that the settlement treated class members with different claims equitably. *Id.* On June 7, 2021, Plaintiff filed the instant Renewed Motion for Preliminary Approval of Class Action Settlement. ECF No. 49.

### B. Negotiation and Settlement Terms

Plaintiff and Defendant engaged in formal discovery prior to beginning mediation, and Defendants provided additional data, documents, and information relevant to class-wide liability and damages to allow the parties to prepare for mediation. ECF No. 49-2 ("Geraci Decl.") ¶¶ 17–18; ECF No. 49-1 at 11.[1] On October 2, 2020, the parties attended a nearly 14-hour mediation with Michael E. Dickstein, Esq., whom Plaintiff represents is an experienced and well-regarded wage and hour class action mediator. Geraci Decl. ¶ 19. Following the mediation, the parties negotiated the detailed Settlement Agreement that is now submitted for preliminary approval. *Id.*; ECF No. 49-2, Ex. 1 ("Settlement Agreement"); ECF No. 52 ("Amendment").

The Settlement Agreement provides for a non-reversionary Maximum Settlement Amount of $900,000, from which the following deductions would be made:

(a) attorneys' fees up to $300,000 to compensate class counsel;

(b) actual costs of $12,940;

(c) service payment to Plaintiff up to $10,000;

(d) settlement administration expenses up to $13,200;

(e) PAGA payment to the Labor Workforce and Development Agency ("LWDA") of $33,750 (75% of the $45,000 PAGA penalty);

---

[1] Page numbers refer to the CM/ECF pagination.

> (f) PAGA payment of $11,250 to PAGA members (June 26, 2018 through
> preliminary approval) (25% of the $45,000 PAGA penalty)

Geraci Decl. ¶ 21; Settlement Agreement ¶ 56(a)–(f).  After these deductions, the
remaining sum, or Net Settlement Amount, would be distributed to all class members
who do not opt-out of the settlement ("Settlement Class Members").  Geraci Decl. ¶ 23;
Settlement Agreement ¶ 56(f)–(h).  Plaintiff's counsel estimates the Net Settlement
Amount to be $518,860.  Geraci Decl. ¶ 23.  The Settlement Agreement provides that the
Net Settlement Amount will be divided as follows:

> (a) Former employees (estimated to be 305) will receive $200 as a "Waiting Time
> Penalties Payment," and the remaining approximately $457,860 will make up the
> "Workweek Fund."
>
> (b) Settlement Class Members will be credited three points for each week of the
> Class Period in which more than 8 hours in a day or 40 hours in a week was
> worked ("Overtime Workweeks") and one point for each week in the Class Period
> in which overtime was not worked ("Non-Overtime Workweeks").  Each
> Settlement Class Member's share of the Workweek Fund will be determined by
> dividing each member's points by the total number of points assigned to all
> Settlement Class Members.

Geraci Decl. ¶¶ 24–25; Settlement Agreement ¶ 56(g)–(h).  Plaintiff calculates the per-
workweek value of the settlement to be $4.22 for Non-Overtime Workweeks and $12.66
for Overtime Workweeks, with a blended value of $7.43 per workweek.  Geraci Decl. ¶
26.  The settlement payments would be allocated 50% to wages and 50% to interest and
penalties.  *Id.* ¶ 27.

The Settlement Agreement provides that following final approval and the effective
date of settlement, each Settlement Class Member who did not request exclusion will be
mailed their share of the Net Settlement Amount without need to submit a claim form.
*Id.* ¶ 28; Settlement Agreement ¶¶ 78, 86.  PAGA members would be mailed the PAGA
payment even if they opt-out of the class settlement.  Geraci Decl. ¶ 28; Settlement

Agreement ¶ 58.  After 120 days, the checks will be void, and after 150 days, uncashed settlement payments would be sent to the State Controller Unclaimed Property Division. Settlement Agreement ¶ 87.

Members of the class can be identified by Defendant's employment records. Geraci Decl. ¶ 34.  To provide notice to the class, the settlement administrator would conduct a search of the National Change of Address database to update class members addresses, and mail a Notice of Class Action Settlement ("Class Notice"), Change of Address form, and pre-printed return envelope ("Notice Packet") to each member of the class as identified in the employment records.  *Id.*; Settlement Agreement ¶¶ 71–73.  The proposed Notice informs the class members of their right to, and the manner and timing in which to: "(1) participate in the Settlement without submitting a claim; (2) dispute the basis of the Individual Settlement Payment; (3) object to the Settlement; and, (4) opt-out of the Settlement."  Geraci Decl. ¶ 35.  The Notice will also estimate the amount of the class member's individual payment and inform them of the release, the date of the Final Approval hearing, and how to obtain further information by contacting class counsel, access the website set up by the settlement administrator, and access the court's docket. *Id.*  The proposed Class Notice is included as Exhibit A to the Settlement Agreement. Settlement Agreement at 58–68 (Ex. A).

The Settlement Agreement releases:

> [A]ny and all claims, obligations, demands, actions, rights, causes of action, and liabilities against GDIT Releasees, whether in law or equity, that have been asserted in the Complaint, or could have been asserted in the Complaint based on the facts and allegations pled therein, and including all such claims for recovery or compensation, and/or all penalties under the California Labor Code and California's Wage Orders, the California Business & Professions Code, from July 23, 2015 through the Preliminary Approval Date.

*Id.* ¶ 34.  With respect to the released claims, Settlement Class Members also waive rights under California Civil Code § 1542.  *Id.*  PAGA Group members also are subject to an equivalent release of claims under PAGA throughout the PAGA period.  *Id.* ¶ 35.

The Settlement Agreement does not cover or release the FLSA claims. The agreement provides that the parties will jointly file a motion for leave for Plaintiff to file a Second Amended Complaint to permit Plaintiff to dismiss the FLSA claims without prejudice. Geraci Decl. ¶ 13; Settlement Agreement ¶ 45. Plaintiff determined the FLSA claims should not be pursued because "The FLSA claim applied to hours over 40 per week; GDIT's compliance with DOL guidance was a strong good faith defense, which limited the FLSA period to two years and precluded liquidated damages; No contact was made with any non-California employee; No notice was given; No one attempted to opt-in; and, no release is being given for FLSA claims." Geraci Decl. ¶ 20.

## II.   DISCUSSION

### A. Legal Standard

The Ninth Circuit has a strong judicial policy that favors settlements in class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). However, when the parties settle before class certification, the court must "peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). To that end, a reviewing court must engage in two, separate inquiries: (1) whether the proposed class meets the certification requirements and (2) whether the proposed settlement is "fundamentally fair, adequate, and reasonable." *Id.* At the preliminary approval stage, the reviewing court considers whether it is likely to approve of the proposal and certify the class. Fed. R. Civ. P. 23(e)(1)(B).

As the Court previously found that the proposed class likely meets the certification requirements, *see* ECF No. 48, the Court only considers here whether the proposed settlement is likely to be approved.

### B. Preliminary Approval of Class Action Settlement

Before approving a proposed class action settlement, a court must find that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e). At the preliminary approval stage, the question is whether approval under the "fair, reasonable, and

adequate" standard is likely.  Fed. R. Civ. P. 23(e)(1)(B).  Any fairness determination requires the Court to "focus[ ] primarily upon whether the particular aspects of the decree that directly lend themselves to pursuit of self-interest by class counsel and certain members of the class—namely attorney's fees and the distribution of any relief, particularly monetary relief, among class members—strictly comport with substantive and procedural standards designed to protect the interests of class members."  *Staton*, 327 F.3d at 960.  Courts evaluate the "settlement as a whole, rather than assessing its individual components."  *Lane v. Facebook, Inc.*, 696 F.3d 811, 818 (9th Cir. 2012).

Rule 23(e) was amended in 2018 to create uniformity amongst the circuits and to focus the inquiry on whether a proposed class action is "fair reasonable, and adequate." Fed. R. Civ. P. 23(e), advisory committee notes (2018 amendment).  As amended, Rule 23(e) provides that a court may approve a proposed class action settlement after considering whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
> > (i) the costs, risks, and delay of trial and appeal;
> > (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> > (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> > (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). The first and second factors are viewed as "procedural" in nature, and the third and fourth factors are viewed as "substantive" in nature. Fed. R. Civ. P. 23(e)(2), advisory committee notes (2018 amendment).

1. Adequacy of Representation

Rule 23(e)(2)(A) requires the Court to consider whether "the class representatives and class counsel have adequately represented the class."  Fed. R. Civ. P. 23(e)(2)(A). As discussed in the Court's previous order, ECF No. 48 at 12, the Court finds that the

adequacy of representation requirement under Rule 23(e)(2)(A) is likely met because Plaintiff and his counsel adequately represent the class for the purposes of conditional class certification.

### 2. Arm's Length Negotiation

Rule 23(e)(2)(B) requires the Court to consider whether "the proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). As the Court found previously, *see* ECF No. 48 at 12, the settlement is the result of an arm's length negotiation facilitated by an experienced mediator after the exchange of sufficient discovery to allow the parties to ascertain Defendant's potential exposure based on employee pay data. Geraci Decl. ¶¶ 17–19, 40–42. Thus, this factor is likely satisfied.

### 3. Adequacy of Relief Provided to the Class

Rule 23(e)(2)(C) requires that the Court consider whether "the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C). The amount offered in the proposed settlement agreement is generally considered to be the most important consideration of any class settlement. See *Bayat v. Bank of the West*, No. C-13-2376 EMC, 2015 WL 1744342, at *4 (N.D. Cal. Apr. 15, 2015) (citing *In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1178–79 (9th Cir. 2013)).

The parties agreed to settle the case for a non-reversionary Maximum Settlement Amount of $900,000. After deductions for attorney's fees, litigation costs, a service payment to Plaintiff, settlement administration expenses, and PAGA penalties (discussed below), Plaintiff estimates that $518,860 will be distributed to Settlement Class Members. Geraci Decl. ¶ 21, 23; Settlement Agreement ¶ 56(a)–(f). An estimated $61,000, or $200 each, will be distributed to former employees as a "Waiting Time Penalties Payment" to account for Plaintiff's claim that Defendant failed to timely pay

wages due at separation.  Settlement Agreement ¶¶ 42, 56(g).  The remaining "Workweek Fund" is estimated to be $457,860 and would be distributed to Settlement Class Members based on the Overtime Workweeks and Non-Overtime Workweeks worked.  Geraci Decl. ¶ 24.  A Settlement Class Member who worked the entire class period is estimated to receive between $1,141.93 and $3,425.80, depending on the number of Overtime Workweeks worked.  *Id.* ¶ 26.

             i.     Costs, risks, and delay of trial and appeal

"To evaluate adequacy, courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer."  *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007).  Here, the Maximum Settlement Amount is $900,000, while Plaintiff estimates Defendant's maximum potential liability to be about $3.55 million.  Geraci Decl. ¶¶ 44, 51, 57.  As the Court discussed in more detail in its order denying Plaintiff's motion for preliminary approval without prejudice, ECF No. 48 at 13–17, Defendant has possible meritorious defenses to Plaintiff's claims that render the realistic exposure faced by Defendants comparable to the Maximum Settlement Amount.

One of Defendant's primary arguments is that the Service Contract Act ("SCA"), 41 U.S.C. §§ 6701 *et seq.* provides a defense to Plaintiff's claims.  ECF No. 36 at 28. The SCA provides that "[i]n determining any overtime pay to which a service employee is entitled under Federal law, the regular or basic hourly rate of pay of the service employee does not include any fringe benefit payments computed under this chapter which are excluded from the definition of 'regular rate' under" the FLSA.  41 U.S.C. § 6707(e).  While Plaintiff maintains that this provision prevents Defendant from excluding the pay in lieu of benefits at issue from the regular rate of pay, Defendant has argued that the pay in lieu of benefits it provides may be excluded from the regular rate of pay under the SCA, as interpreted by the Department of Labor ("DOL").[2]  Geraci Decl. ¶ 46.  The

---

[2] The DOL regulation provides:

few district courts to have considered the issue have come to different conclusions.  *See Barnes v. Akal Sec., Inc.*, No. 04-1350-WEB, 2005 WL 1459112, at *5 (D. Kan. June 20, 2005); *Bonner v. Metro. Sec. Servs., Inc.*, No. SA-10-CV-937-XR, 2011 WL 902252, at *3 (W.D. Tex. Mar. 15, 2011); *Phelps v. Parsons Tech. Support, Inc.*, No. CIV. 2:09-0327-JMS, 2010 WL 4386920, at *2 (S.D. Ind. Oct. 29, 2010).  The risk that the class would recover little to nothing if the Court were to accept Defendant's SCA defense supports a finding that the Maximum Settlement Amount, which is equivalent to about 25% of the class's total potential recovery on the class claims, would adequately compensate the class.[3]

Other disputes also increase the risks of litigation.  These disputes include how to calculate overtime premiums under California Labor Code § 1194, whether rest and meal break premiums are paid at the regular rate of pay or the base hourly wage under California Labor Code § 226.7, whether Defendant's failure to pay all wages due at separation was "willful" under California Labor Code § 203(a), and whether wage statements issued after December 2019 would be noncompliant even if Plaintiff were to prevail on the regular rate of pay issue given changes Defendant made to the wage statements at that time.  *See* ECF No. 48 at 15–16.  Accordingly, although the settlement amount is only a portion of Defendant's maximum potential exposure according to Plaintiff's calculations, the relief appropriately accounts for the not insubstantial risk that

> If the employer furnishes equivalent benefits or makes cash payments, or both, to an employee as therein authorized, the amounts thereof, to the extent that they operate to discharge the employer's obligation under the [SCA] to furnish such specified fringe benefits, may be excluded pursuant to such Act from the employee's regular or basic rate of pay in computing any overtime pay due the employee under the Fair Labor Standards Act.

29 C.F.R. § 778.7.

[3] At the hearing on Plaintiff's initial motion for preliminary approval, the Court requested clarification regarding whether the SCA-related defense applied to all class members.  In the renewed motion, Plaintiff's counsel explains that approximately 70% of class members worked pursuant to the SCA and received pay in lieu of benefits during at least one workweek during the class period.  Geraci Decl. ¶¶ 14–15.  Based on these representations, it appears that Defendant would be able to present the SCA as a defense to all of the overtime claims arising from exclusion of pay in lieu of benefits from the regular rate.

Plaintiff and the class would recover nothing on some or all claims, as well as the costs and delay of trial and any appeal. The Court therefore concludes that the costs and risks of proceeding with litigation likely renders the agreed-upon settlement amount, at 25% of Defendant's maximum potential liability,[4] adequate relief for the class as a whole.

> ii.    Effectiveness of proposed method of distributing relief

As the Court previously found, the method of distributing relief to the class is simple and effective. ECF No. 48 at 17–18. Class members will not have to submit claims and instead will be identified by their employment records and automatically sent their settlement payments unless they opt-out. Settlement Agreement ¶¶ 71, 72, 78, 86, Ex. A. Each class member's share will be calculated based on whether they are a former employee and thus eligible for the "Waiting Time Penalties Payment," and how many overtime and non-overtime workweeks they worked, all of which can be readily determined by Defendant's employment records, and class members will have an opportunity to challenge errors relating to their dates of employment. *Id.* ¶¶ 42, 57(g)– (h), 80. As the Settlement Agreement provides clear guidelines for how the funds will be disbursed and class members need not take any affirmative steps to receive payment, this factor weighs in favor of preliminary approval.

> iii.    Terms of proposed award of attorney's fees

The Settlement Agreement provides that Defendant will not oppose Class Counsel's motion for attorney's fees, provided it does not exceed $300,000. Geraci Decl. ¶ 21; Settlement Agreement ¶ 56(a). "While attorneys' fees and costs may be awarded in a certified class action where so authorized by law or the parties' agreement, Fed. R. Civ. P. 23(h), courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011). Courts are

---

[4] The estimated Net Settlement Amount is about 15% of Defendant's maximum potential liability.

wary of "clear sailing agreements," in which the defendant agrees not to oppose a fee motion as long as it does not exceed a set amount, because of the concern that counsel may have "bargained away something of value to the class" in exchange. *See id.* at 947–48 (quoting *Weinberger v. Great N. Nekoosa Corp.*, 925 F.2d 518, 525 (1st Cir. 1991)).

Fees can be calculated by either the lodestar or percentage-of-recovery method in class actions that result in benefits to the entire class. *Id.* at 942. While the maximum amount to be sought by Class Counsel is one-third of the fund, higher than the benchmark 25% courts look to when employing the percentage-of-recovery method, Counsel attests that the lodestar, as of the date of Plaintiff's motion, amounts to $308,063. Geraci Decl. ¶ 64; *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990). As the Court concluded in its previous order, the attorney's fee provision of the Settlement Agreement is not so out of proportion with the relief afforded to the class that it "calls into question the fairness of the proposed settlement," is not conditioned on the Court's award of attorney's fees, and is non-reversionary. ECF No. 48 at 18–19; *Pokorny v. Quixtar Inc.*, No. 07-0201 SC, 2011 WL 2912864, at *1 (N.D. Cal. July 20, 2011); *cf. Bluetooth*, 654 F.3d at 949 (noting the unfairness of "kicker" provisions that allow reversion to defendant in the case of a lesser attorney's fee award).

The Settlement Agreement contains a *cy pres* provision that provides that if Plaintiff appeals the Court's order on attorney's fees, costs, or the Class Representative Service Payment, any of the requested fees not granted on appeal will be distributed to a charitable recipient. Distribution to a *cy pres* recipient may be appropriate when payment of unclaimed funds to individual class members is impractical. *See In re Easysaver Rewards Litig.*, 906 F.3d 747, 760 (9th Cir. 2018). "*Cy pres* distributions must account for the nature of the plaintiffs' lawsuit, the objectives of the underlying statutes, and the interests of the silent class members." *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1036 (9th Cir. 2011). The Court cannot approve "*cy pres* distributions to myriad charities which, though no doubt pursuing virtuous goals, have little or nothing to do with the purposes of the underlying lawsuit or the class of plaintiffs involved." *Id.* at 1038–39.

In the Court's previous denial of Plaintiff's motion for preliminary settlement approval, it determined that although a distribution of the funds not awarded as attorney's fees on appeal to individual class members may be sufficiently burdensome to justify a *cy pres* distribution, the Court was not likely to approve the *cy pres* recipient identified because the organization did not have the requisite connection to the lawsuit or the statutes that Plaintiff seeks to enforce.  ECF No. 48 at 20–21.  The parties have now decided to name as *cy pres* recipient Legal Aid at Work, a non-profit that provides legal services to indigent employees in California.  Geraci Decl. ¶¶ 29–30.  Plaintiff has filed an amendment to the Settlement Agreement reflecting this change.  *See* ECF No. 52. Legal Aid at Work serves members of the community that, like the class members, may have claims against their employers under California labor and employment law, and thus there is a clear nexus between the proposed *cy pres* recipient and the aims of the lawsuit such that distribution to the organization is appropriate under the Ninth Circuit standard. The organization has been approved as a *cy pres* recipient in other cases alleging violations of the California Labor Code.  *E.g.*, *Villafan v. Broadspectrum Downstream Servs., Inc.*, No. 18-CV-06741-LB, 2020 WL 6822908, at *3, 7 (N.D. Cal. Nov. 20, 2020); *O'Connor v. Uber Techs., Inc.*, No. 13-CV-03826-EMC, 2019 WL 1437101, at *13 (N.D. Cal. Mar. 29, 2019); *Cifuentes v. CEVA Logistics U.S., Inc.*, No. 16-CV-01957-H-DHB, 2017 WL 2537247, at *5 (S.D. Cal. June 12, 2017).

The Court noted at the hearing that Plaintiff's attorney Michael Singer is on the board of directors of Legal Aid at Work.  However, based on the information before the Court, this does not appear to pose a conflict of interest that would render Legal Aid at Work an improper *cy pres* recipient.  The organization's board of directors includes over 60 individuals from a variety of law firms, foundations, and other organizations, and there is no indication that Mr. Singer would receive any personal benefit from Legal Aid at Work's *cy pres* award.  *See Board of Directors*, Legal Aid at Work, https://legalaidatwork.org/board-of-directors/.  Additionally, because Legal Aid at Work's mission is closely aligned with the interests of class members and the objectives

of California labor law, this situation does not raise the specter that Plaintiff's counsel seeks to benefit a pet project unrelated to the purposes of the settlement.

The Court accordingly finds that the attorney's fee and *cy pres* provisions are likely to be approved.

### iv.   Agreements made in connection with the proposal

Rule 23(e)(3) requires that the Parties "must file a statement identifying any agreement made in connection with the [settlement] proposal." Fed. R. Civ. P. 23(e)(3). Plaintiff has not identified any such agreement and the Court is not aware of any other agreements.

### 4.   Equitable Treatment of Class Members

Rule 23(e)(2)(D) requires the Court to consider whether the Settlement Agreement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). In doing so, the Court determines whether the settlement "improperly grant[s] preferential treatment to class representatives or segments of the class." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1079. "Matters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e)(2)(D), advisory committee notes (2018 amendment); *see also* 4 William B. Rubenstein, Newberg on Class Actions § 13:56 (5th ed. 2020) ("Put simply, the court's goal is to ensure that similarly situated class members are treated similarly and that dissimilarly situated class members are not arbitrarily treated as if they were similarly situated.").

### i.   Equity between class members with different claims

In the Court's previous order, while finding that the distribution method of the "Workweek Fund" likely equitably treated class members based upon the amount of overtime worked, the Court identified a potential point of inequity between class members with waiting time penalty claims and other claims. Specifically, the Court noted that there was a significant discrepancy between what the Settlement Provided for

the waiting time penalty claims ($200 per former employee) and what Plaintiff's counsel had calculated as the realistic exposure on those claims ($1,560 per former employee), resulting in a 12.8% settlement of those claims compared to more than 100% of what Plaintiff estimated was the realistic exposure for the overtime and wage statement claims. ECF No. 48 at 22–23.  At the previous hearing, the Court requested that Plaintiff's counsel include additional explanation for why this difference is justified in any renewed motion.

In the renewed motion, Plaintiff explains that counsel's initial estimate for Defendant's realistic exposure on the waiting time penalty claims was "overly optimistic."  ECF No. 49-1 at 21 (citing Geraci Decl. ¶ 51).  Plaintiff now estimates that there is no more than a 10% probability of success on that claim, given the strength of Defendant's defense that its underpayment at termination was not "willful."  *Id.* at 21–22. Plaintiff believes this defense is quite strong because Defendant may be able to show it had a good faith belief that it paid overtime at the correct rate based on the DOL regulation indicating that pay in lieu of benefits could be excluded from the regular rate of pay.  *Id.* at 22.  Based the 10% likelihood of success, Plaintiff estimates that the realistic exposure per former employee is no more than $624, and the $200 waiting time penalty payment provided for in the settlement agreement represents about 32% of that amount.  *Id.* at 22; Settlement Agreement ¶¶ 42, 56(g).

The Court agrees that class members face long odds in arguing that Defendant's violation, if any, was willful.  As the Northern District found in *Hill v. Walmart*, any "objectively reasonable" evidence supporting an employer's defense, if taken in good faith, will suffice to preclude a finding that the failure to pay was willful.  *See Hill v. Walmart Inc.*, No. 19-CV-05436-JST, 2021 WL 342574, at *7 (N.D. Cal. Jan. 14, 2021). Based on an initial review of the parties' positions, it appears that there was a good faith dispute that any wages were due at separation based upon the exclusion of pay in lieu of benefits from the overtime calculation, given the existence of the DOL regulation supporting Defendant's interpretation of the SCA.  To be entitled to waiting time

penalties, class members would therefore not only have to succeed on the merits of the overtime claim, but would have to demonstrate that the defenses presented by Defendant were objectively unreasonable or presented in bad faith, even though the DOL seemingly endorsed Defendant's position.  The Court concludes that these obstacles justify Plaintiff's estimation that there was a low likelihood of success on this claim.

Even if the value of the waiting time penalty claims are discounted due to the low likelihood that class members will prevail, the Settlement Agreement still compensates class members at a higher rate for the overtime and wage statement penalty claims[5] than for the waiting time penalty claims.  However, a settlement need not perfectly approximate the likely recovery.  *See Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998).  Plaintiff notes that many other district courts have approved settlement agreements that release waiting time penalty claims without allocating any settlement funds, or only a small amount, to those claims, which while not dispositive does reflect the fact that settlement funds need not be equally allocated between claims to be approved.  *See* ECF No. 49-1 at 22–23.  Because class members are not likely to succeed on the waiting time penalty claims and will otherwise be compensated for Defendant's alleged overtime and wage statement violations from the "Workweek Fund," allocating $200 per former employee for these claims does not appear to be outside of the range of reasonableness.

The Court therefore concludes that the Settlement Agreement provides reasonably equitable treatment to class members with different claims.

      ii.  Equity between unnamed members and class representative

As the Court discussed previously, *see* ECF No. 48 at 23–24, the proposed $10,000 "Service Payment" to Plaintiff—which accounts for about 1% of the Maximum

---

[5] Plaintiff calculated the realistic exposure for the overtime and wage statement penalty claims to be $146,205 and $271,330, respectively, for a total of $417,535.  Geraci Decl. ¶¶ 48, 57.  Plaintiff estimates that the "Workweek Fund" will be approximately $457,860.

Settlement Amount and 2% of the Net Settlement Amount—does not render the settlement inequitable.  Although Plaintiff will be required to adequately support the basis for this payment by demonstrating, for example, the work done on behalf of the class, *see Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1164 (9th Cir. 2013); *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009), the fact that such a payment is contemplated by the Settlement Agreement does not render the settlement inequitable.

The Court thus determines that the Settlement Agreement likely treats class members equitably.

### 5. PAGA Claims

As the Court found in its previous order, the Settlement Agreement is likely to meet the "Rule 23-like standard" that district courts apply to determine whether the settlement of PAGA claims is "fundamentally fair, reasonable, and adequate."  *Haralson v. U.S. Aviation Servs. Corp.*, 383 F. Supp. 3d 959, 971 (N.D. Cal. 2019); ECF No. 48 at 27–28.

Under PAGA, an "aggrieved employee" may bring an action for civil penalties for labor code violations on behalf of himself and other current or former employees.  Cal. Lab. Code § 2699(a).  A plaintiff bringing a representative PAGA action not only owes a duty to their "fellow aggrieved workers," but "also owes responsibility to the public at large; they act, as the statute's name suggests, as a private attorney general."  *O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110, 1133–34 (N.D. Cal. 2016).  Any settlement of PAGA claims must be approved by the Court.  Cal. Lab. Code § 2699(l)(2).  While PAGA actions are fundamentally different than class actions, district courts apply similar standards in evaluating the settlement of PAGA claims and class claims under Rule 23. *Arias v. Superior Ct.*, 46 Cal. 4th 969, 982–84 (2009); *Baumann v. Chase Inv. Servs. Corp.*, 747 F.3d 1117, 1123 (9th Cir. 2014); *Haralson*, 383 F. Supp. 3d at 972; *cf. O'Connor*, 201 F. Supp. 3d at 1133 (quoting LWDA's response that PAGA settlements must meet the "fundamentally fair, reasonable, and adequate" standard).

PAGA provides that "the civil penalty is one hundred dollars ($100) for each aggrieved employee per pay period for the initial violation and two hundred dollars ($200) for each aggrieved employee per pay period for each subsequent violation," except for provisions in which a penalty is specifically provided. Cal. Lab. Code § 2699(f)(2). The civil penalty for wage statement violations is $250 for the initial violation and $1,000 for each subsequent violation. Cal. Lab. Code § 226.3. However, a court may "award a lesser amount than the maximum civil penalty amount specified by this part if, based on the facts and circumstances of the particular case, to do otherwise would result in an award that is unjust, arbitrary and oppressive, or confiscatory." Cal. Lab. Code § 2699(e)(2).

The Settlement Agreement's $45,000 allocation to PAGA penalties, 75% of which will be paid to the LWDA and 25% of which will be paid to aggrieved employees who worked during the PAGA period, is likely to be found fair, reasonable, and adequate. Even though the allocation to PAGA penalties represents a fraction of Defendant's potential exposure, courts have approved similarly sized settlements despite far lower allocations to PAGA penalties. *Magadia v. Wal-Mart Assocs., Inc.*, 384 F. Supp. 3d 1058, 1101 (N.D. Cal. 2019) (collecting cases). Allocating less of the settlement to PAGA penalties is justified because it maximizes payments to individual class members and furthers the public policies underlying PAGA by providing a "robust" remedy for alleged violations of the California Labor Code. *See Mejia v. Walgreen Co.*, No. 2:19-CV-00218 WBS AC, 2021 WL 1122390, at *5 (E.D. Cal. Mar. 24, 2021); *O'Connor*, 201 F. Supp. 3d at 1134 (noting that "if the settlement for the Rule 23 class is robust, the purposes of PAGA may be concurrently fulfilled," but finding that settlement for less than 5% of the total verdict value of claims released was not fair and reasonable).

The Court therefore concludes that the proposed settlement's allocation to PAGA penalties is likely to be found fair, reasonable, and adequate.

\ \ \

\ \ \

6.  <u>To-Be-Withdrawn FLSA Claims</u>

The FAC includes claims under the FLSA, but the parties have agreed to dismiss the FLSA claims without prejudice should the settlement be preliminarily approved. Geraci Decl. ¶ 13; Settlement Agreement ¶ 45.  The Settlement Agreement does not release any FLSA claims.  *Id.* ¶¶ 34, 35.  As the Court found previously, exclusion of the FLSA claims from the settlement likely does not jeopardize the fairness of the agreement.

Accordingly, the Court finds that the revised Settlement Agreement likely satisfies the "fair, reasonable, and adequate" standard set out in Rule 23(e)(2).  The Court therefore **GRANTS** the motion for preliminary approval.  The Court also reiterates its conclusion from its previous order that class certification is provisionally approved for the purposes of settlement, Plaintiff's counsel is provisionally appointed as Class Counsel for the purposes of settlement, and Plaintiff is provisionally designated as Class Representative for the purposes of settlement.  ECF No. 48 at 29.

7.  <u>Notice to Class Members</u>

Before the final approval hearing, the Court must direct adequate notice of the settlement be provided to all class members.  Federal Rule of Civil Procedure 23 provides:

> [T]he court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. . . . The notice must clearly and concisely state in plain, easily understood language:
>> (i) the nature of the action;
>> (ii) the definition of the class certified;
>> (iii) the class claims, issues, or defenses;
>> (iv) that a class member may enter an appearance through an attorney if the member so desires;
>> (v) that the court will exclude from the class any member who requests exclusion;
>> (vi) the time and manner for requesting exclusion; and
>> (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

The Court is satisfied that the steps to be taken by the settlement administrator to locate class members using employment records and the National Change of Address database constitutes "reasonable effort" to identify and provide notice to class members. Settlement Agreement ¶¶ 71–73.  The Court has also reviewed the proposed Class Notice.  Settlement Agreement at 58–68 (Ex. A).  For the most part, the Class Notice clearly explains the information required by Rule 23(c)(2)(B), using short summaries and tables for the basic information and a question-and-answer format to provide additional details.  The Class Notice will also provide class members with a calculation of the payment they can expect to receive based on GDIT's employment records, providing them with an opportunity to contest any errors.  However, while the Class Notice notes that class members may "also may hire and pay another lawyer besides Class Counsel to attend" the final approval hearing in the answer to question number 15 ("Do I have to come to the hearing?"), the Class Notice could more clearly state "that a class member may enter an appearance through an attorney if the member so desires" by including this information in the answer to question number 10 ("Do I have a lawyer in this case?"). Fed. R. Civ. P. 23(c)(2)(B)(iv).

Accordingly, the Court will approve the Class Notice contingent on the inclusion of the information required by Rule 23(c)(2)(B)(iv) in the answer to question number 10.

## III.   CONCLUSION

The Court, having fully reviewed the Renewed Motion for Preliminary Approval of Class Action Settlement, the supporting Points and Authorities, Declarations of Class Counsel Jeff Geraci and Nicholas J. Ferraro, the   Joint Stipulation of Class Action Settlement and Release ("Settlement Agreement"), and the proposed Notice of Class Action Settlement, and in recognition of the Court's duty to make a preliminary determination as to the reasonableness of any proposed class action settlement and, if preliminarily determined to be reasonable, to ensure proper notice is provided to Class Members in accordance with due process, and to conduct a Final Approval hearing as to

the good faith, fairness, adequacy and reasonableness of any proposed settlement, FINDS, CONCLUDES, and ORDERS:

1.     The Court finds, on a preliminary basis, that the Settlement Agreement attached to the Declaration of Jeff Geraci as Exhibit "1" and the Amendment to the Settlement Agreement filed at ECF No. 52 incorporated by reference in full and made a part of this Order of preliminary approval, appears to be within the range of reasonableness of a settlement which could ultimately be given final approval by this Court.

2.     It appears to the Court on a preliminary basis that: (a) the non-reversionary Maximum Settlement Amount is fair and reasonable to Class Members when balanced against the probable outcome of further litigation relating to class certification, liability and damages issues and potential appeals; (b) significant investigation, research, and discovery, have been conducted by counsel for each Party and they are able to reasonably evaluate their positions; (c) settlement at this time will avoid substantial costs, delay, and risks that would be presented by the further prosecution of the litigation; and (d) the proposed Settlement has been reached through intensive, serious, and non-collusive arms'-length negotiations between the Parties facilitated by an experienced mediator. Accordingly, Plaintiff's Motion for Preliminary Approval of Class Action Settlement is **GRANTED**.

3.     As a part of the Court's preliminary approval, it finds for settlement purposes only, the Class meets the requirements of Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure, and the Court preliminarily approves and incorporates the Settlement Agreement and conditionally certifies the Class, pursuant to the Settlement Agreement's terms and conditions as follows: "all individuals employed by General Dynamics Information Technology, Inc. ("GDIT") in a non-exempt job position at a work location in California, according to GDIT's records, at any time between July 23, 2015 and September 30, 2020" ("Class" or "Class Members"); and "all Settlement Class Members that are former employees as of the Preliminary Approval Date and whose employment with GDIT was terminated between July 23, 2016 and the Preliminary Approval Date" (the "Waiting Time Penalties Subclass").

4.      For settlement purposes only, the Court appoints Plaintiff Jose Loreto as the Class Representative.

5.      For settlement purposes only, the Court appoints Cohelan Khoury & Singer and Ferraro Vega Employment Lawyers, Inc, as Class Counsel.

6.      The Court appoints CPT Group, Inc., as the Settlement Administrator to administer the Settlement pursuant to the terms of the Settlement Agreement.

7.      The Court approves, as to form and content, the Notice of Class Action Settlement ("Class Notice") attached to the Settlement Agreement as Exhibit A, subject to the change to the answer to Question 10 noted in this Order.  The Court finds that the Class Notice advises the Class of the pendency of the Class Action, of the proposed Settlement terms, of the preliminary Court approval of the Settlement, of the automatic payment of a proportionate share of the Settlement monies if the Class Member does not request to be excluded, of the released claims, of the estimated amount each may expect to receive pursuant to the proposed Settlement, of their right to submit objections or requests for exclusion and of the manner and timing for doing these acts.

8.      The Court concludes the proposed Class Notice and the procedure set forth in Settlement Agreement for providing notice to the Class Members, will provide the best notice practicable under the facts and circumstances of this case. There is no alternative method of notice that would be more practical or more likely to notify Class Members of the terms of the Settlement. The Class Notice fairly, plainly, accurately, and reasonably informs the Class Members of: (a) the nature of the Action, the definition of the Class Members, the identity of Class Counsel, and the essential terms of the Settlement Agreement, including the plan of allocation under the Class and PAGA portions of the Settlement; (b) Plaintiff's application for the Plaintiff's Service Enhancement award and Class Counsel's request for attorneys' fees and litigation costs; (c) how to participate in and receive proceeds under the Class portions of the Settlement; (d) how to object to or request exclusion from the Settlement; and (e) how to obtain additional information regarding the Action and the Settlement. The Court thus finds that the notice requirements

for class actions are satisfied.

9.   IT IS ORDERED that:

A.   No more than thirty (30) calendar days after the Order Granting Preliminary Approval, Defendant shall forward to the Settlement Administrator, information in electronic format, including regarding all Class Members' names, last known residence addresses, Social Security numbers, and dates worked for Covered Class Workweeks ("Class Member Data").

B.   No more than twenty-one (21) calendar days after receipt of the Class Member Data, the Settlement Administrator shall mail the Class Notice to each Class Member, by first class United States mail, postage pre-paid. The Settlement Administrator shall take those measures specified, and on the conditions set forth in the Settlement Agreement, for updating an address after the first mailing of the Class Notice.

C.   All mailings shall be made to the present and/or last known mailing address of the Class Members based on Defendant's records, and as may be updated and located by the Settlement Administrator and as may be provided to the Settlement Administrator by Class Counsel or Defendant's counsel. The Court finds, and so orders, that the mailing of Class Notice to the Class as set forth in the Settlement Agreement and this paragraph is the best means practicable by which to reach Class Members and is reasonable and adequate pursuant to all constitutional and statutory requirements including all due process requirements; and,

10.   IT IS FURTHER ORDERED that:

A.   Requests for Exclusion. Requests for exclusion from the Settlement must be mailed to the Settlement Administrator in the manner set forth in the Class Notice, postmarked no later than forty-five days following the mailing of the Class Notice by the Settlement Administrator ("Claims Period"). If the 45th day fall on a Sunday or Holiday, the Claims Period shall end on the next business day that is not a Sunday or Holiday.

B.   Objections.   Written letters of objection to the Settlement may be mailed to the Settlement Administrator in the manner set forth in the Class Notice,

postmarked on or before the expiration of the Claims Period.  Any written letter of objection should be signed by the Class Member and/or his or her representative; include the objecting Class Member's name, address, telephone number; the last four digits of his/her Social Security number, and the case name and number as shown in the Class Notice; the basis for each objection, and whether or not the Class Member and/or his or her representative intends to appear at the final approval hearing.

11.    IT IS FURTHER ORDERED that within fifteen (15) court days before the expiration of the Claims Period, Class Counsel shall file their application for awards of reasonable attorneys' fees and litigation expenses, the Class Representative Service Enhancement, and the Settlement Administrator's expenses.

12.    IT IS FURTHER ORDERED, that all papers in support of the Motion for Order Granting Final Approval of the Class Action Settlement shall be filed at least twenty-eight (28) calendar days before the Final Fairness/Final Approval hearing.

13.    IT IS FURTHER ORDERED that the Final Fairness / Final Approval hearing shall be held before the undersigned at **1:30 p.m.** on November 12, 2021, in Courtroom 2D, the United States District Court, Southern District, 221 West Broadway, San Diego, California 92101 to consider the fairness, adequacy and reasonableness of the proposed Settlement preliminarily approved by this Order of Preliminary Approval, and to consider the application of Class Counsel for awards of reasonable attorneys' fees and litigation expenses, the Class Representative Service Enhancement, and the Settlement Administrator's expenses.

14.    IT IS FURTHER ORDERED that if, for any reason, the Court does not execute and file an Order Granting Final Approval and Judgment, or if the Effective Date, as defined by the Settlement Agreement, does not occur for any reason whatsoever, the Settlement Agreement and the proposed Settlement subject of this Order and all evidence and proceedings had in connection therewith, except for the confidentiality, non-disclosure, and non-admission provisions in the Settlement Agreement, shall be null and void and without prejudice to the status quo ante rights of the Parties to the litigation as

more specifically set forth in the Agreement.

15.    IT IS FURTHER ORDERED that Defendant shall, in compliance with the Class Action Fairness Act, 28 U.S.C. § 1715, serve written notice of the proposed Settlement on the U.S. Attorney General and the appropriate California state official, along with the appropriate state official in every state where a Class Member resides no later than five (5) days of the issuance of this Order if not earlier completed prior to the hearing on Plaintiff's Motion for Order Granting Preliminary Approval. Defendant shall submit a statement of compliance with the Court in a timely manner to prevent delay of the Effective Date.

16.    IT IS FURTHER ORDERED that, pending further order of this Court, all proceedings in this matter except those contemplated by this Order and in the Settlement Agreement are stayed.

17.    IT IS FURTHER ORDERED that, pending the Final Approval hearing, Plaintiff and all Class Members and anyone acting on their behalf hereby are prohibited and enjoined, unless and until the Class Member opts out, from: further prosecution of the Action; filing, or taking any action directly or indirectly, to commence, prosecute, pursue or participate on a class action basis any action, claim or proceeding arising out of the facts and allegations pled in the Second Amended Complaint against GDIT or the GDIT Releasees (as defined in the Settlement Agreement) in any forum in which any of the claims subject to the Settlement are asserted, or which in any way would prevent any such claims from being extinguished; or seeking certification of a class action that involves any such claims.

18.    The Court expressly reserves the right to adjourn or to continue the Final Approval hearing from time-to-time without further notice to Class Members, except that notice of a continuance shall be provided to all Class Members who submit written objections. In the event the Settlement does not become final for any reason, this Preliminary Approval Order shall be of no further force or effect and the fact that the Parties were willing to stipulate to class certification as part of the Settlement shall have no bearing

on, and not be admissible in connection with, the issue of whether a class should be certified in a non-settlement context.

19.     The Parties and the Settlement Administrator will comply with the following schedule for the Settlement Administration and final approval process:

| Event | Date |
|---|---|
| Defendants to provide Class Member Data to Settlement Administrator | Within thirty (30) calendar days after the Preliminary Approval Date |
| Settlement Administrator to mail Class Notice | Within twenty-one (21) calendar days after receipt of Class Member Data |
| Class Counsel to file Motion for Attorney's fees, costs, and incentive award | Fifteen (15) court days before the deadline to file objections to Settlement |
| Deadline for Class Members to opt-out and/or object to the Settlement Agreement | Forty-five (45) calendar days from the initial mailing of the Class Notice by the Settlement Administrator.<br><br>If the 45th day fall on a Sunday or Holiday, the deadline shall end on the next business day that is not a Sunday or Holiday |
| Last day to rescind objections or opt-outs | One (1) business day before Fairness Hearing |
| Class Counsel to file Motion for Final Approval of Settlement | Twenty-eight (28) calendar days before the Final Fairness/Final Approval hearing. |
| Final Approval Hearing | **Friday, November 12, 2021** at 1:30 P.M. in Courtroom 2D (subject to change by order of the Court) |

**IT IS SO ORDERED.**

Dated:  July 26, 2021

Hon. Gonzalo P. Curiel
United States District Judge